**RAJ V. ABHYANKER**, California SBN 233,284
raj@legalforcelaw.com
**BATKHAND ZOLJARGAL**, California SBN 262,918
zola@legalforcelaw.com
**LEGALFORCE RAPC WORLDWIDE**
1580 W. El Camino Real, Suite 10
Mountain View, California 94040
Telephone: 650.965.8731
Facsimile: 650.989.2131

Attorneys for Plaintiffs,
LegalForce RAPC Worldwide, P.C.
LegalForce Inc., and Raj V. Abhyanker

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

UNLIMITED JURISDICTION

| | |
|---|---|
| 1. LEGALFORCE RAPC WORLDWIDE, P.C.; <br> 2. LEGALFORCE INC.; and <br> 3. RAJ V. ABHYANKER, <br><br> Plaintiffs, <br><br> v. <br><br> 1. TTC BUSINESS SOLUTIONS, LLC.; <br> 2. THE TRADEMARK COMPANY LLC.; <br> 3. MATTHEW H. SWYERS; and <br> 4. AMY REYNOLDS, <br><br> Defendants; <br><br> AND DOES 1-50. | Case No. 5:17-cv-7318 <br><br> **COMPLAINT FOR:** <br><br> 1. FEDERAL UNFAIR COMPETITION; <br> 2. CALIFORNIA UNFAIR COMPETITION; <br> 3. CALIFORNIA FALSE AND MISLEADING ADVERTISING; <br> 4. PROFESSIONAL NEGLIGENCE; AND <br> 5. BREACH OF FIDUCIARY DUTIES. <br><br> **Unlimited Civil Jurisdiction** |

|  | **JURY TRIAL DEMANDED** |
|---|---|

1.   Plaintiffs LegalForce RAPC Worldwide, P.C., LegalForce, Inc., and Raj V. Abhyanker (jointly, "LegalForce" or "Plaintiffs") submit the following complaint (the "Complaint") against TTC Business Solutions, LLC ("The Trademark Company") having the website www.ttcbusinesssolutions.com, and its covert principal owner Amy Reynolds ("Reynolds"); The Trademark Company LLC (also referred to as jointly with TTC Business Solutions, LLC as the "The Trademark Company") having the website http://www.thetrademarkcompany.com;  and the excluded attorney Matthew H. Swyers ("Swyers"), owner and/or stakeholder in both The Trademark Company LLC and TTC Business Solutions, LLC, upon reason and belief (collectively referred to as "Defendants" or "The Trademark Company Entities").

## NATURE OF ACTION

2.   This Complaint is brought by Plaintiffs to expose the willful and systematic acts of unauthorized practice of law and unfair competition by The Trademark Company Entities with respect to preparation and filing of trademark applications before the United States Patent & Trademark Office ("USPTO"). Despite being excluded from practice before the USPTO for submitting

fraudulent specimens and failing to supervise trademark assistants on January 26, 2017[1], it appears that attorney Matthew Swyers has resurrected his "The Trademark Company LLC" website (http://www.thetrademarkcompany.com/) in a different corporation "TTC Business Solutions LLC" using a similar domain (https://www.ttcbusinesssolutions.com/) on a website having the same logo, look and feel, and trade dress as the previous one.[2]   Swyers even eludes to "The Trademark Company" name through the abbreviation "TTC", claiming its goodwill of 14 years, and continuing forward his unauthorized practice of law with a different entity purportedly controlled by a different individual Amy Reynolds.[3]

3.  Upon reason and belief, Amy Reynolds is a *"straw woman"[4]* not involved in the day to day operations of TTC Business Solutions, LLC or The Trademark Company.  For example, Amy Reynolds is not even listed as affiliated with the company on the public website or on external websites.  She maintains no LinkedIn profile affiliated with any entity of The Trademark Company.  In contrast, Matthew Swyers is listed as the "Manager" of TTC Business Solutions, LLC (**Exhibit M**).   Matthew Swyers's work address and that for TTC Business

---

[1] See **Exhibit H**, Final Order excluding Matthew H. Swyers from practice before the USPTO.
[2] For example, compare **Exhibit C-1** for "TTCBusinessSolutions.com with **Exhibit C-2** for TheTrademarkCompany.com"
[3] For example, on the About Us page for www.ttcbusinesssolutions.com, Swyers refers to the history of TTC Business solutions dating back from 1999, when TTC Business Solutions LLC was not even yet formed, upon reason and belief.  See **Exhibit E-1** v. **Exhibit E-2.**
[4] From "*straw man*", or "an intentionally misrepresented proposition that is set up because it is easier to defeat than an opponent's real argument."

Solutions, LLC and the  The Trademark Company are same address on Google local business search (**Exhibit G-1**), and on the trademark filing for the name mark TTC Business Solutions  (**Exhibit G-2**).

4. Moreover, despite being excluded from practice before the USPTO, Matthew Swyers continues to represent to the public that he is a "Copyright and Trademark Attorney" and "Principal and General Counsel" for The Trademark Company on his LinkedIn profile.   (**Exhibit G-3**).

5. Through its acts of preparing and filing trademarks, The Trademark Company Entities harm the  "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers. The Plaintiffs ask The Trademark Company Entities be enjoined from and pay damages for its unauthorized practice of law, false advertising, unfair competition and other claims with respect to preparation and filing of trademark applications before the USPTO.

## THE PARTIES

**The Plaintiffs**

6. Plaintiff LegalForce RAPC Worldwide, P.C. ("LegalForce RAPC Worldwide") is a law firm wholly owned by Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal

place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

7. Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.

8. Plaintiff Raj Abhyanker is a California licensed attorney practicing patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.  Plaintiff Raj Abhyanker is a winner of the 2013 Legal Rebel award by the American Bar Association.

**The Defendants**

9. TTC Business Solutions, LLC is a North Carolina corporation ("The Trademark Company") with a principal place of business at 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.  TTC Business Solutions, LLC is not a law firm in the United States and is not authorized to practice law in any state.  TTC Business Solutions, LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

10. Defendant Amy Reynolds ("Reynolds") is a covert owner of TTC Business Solutions, LLC upon reason and belief[5] having a principal place of business at 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.

11. The Trademark Company, LLC is a North Carolina corporation (also referred collectively with TTC Business Solutions, LLC as "The Trademark Company") with a principal place of business at the same address of 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.  The Trademark Company, LLC is not a law firm in the United States and is not authorized to practice law in any state.   The Trademark Company, LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

12. Defendant Matthew Swyers ("Swyers") is the owner of The Trademark Company, LLC and a covert owner or stakeholder of TTC Business Solutions, LLC upon reason and belief[6], and continues to be a licensed attorney in Virginia and the District of Columbia[7], despite being excluded from practice before the USPTO, having a principal place of business at 2703 Jones Franklin Rd Ste 205,

---

[5] Amy Reynolds is listed as the principal member of TTC Business Solutions, LLC on the BBB profile shown in **Exhibit P**.  Last checked **December 26, 2017**.

[6] Matthew Swyers is listed as the "Manager" of TTC Business Solutions, LLC (**Exhibit M**).   Matthew Swyers's work address and that for TTC Business Solutions, LLC and the  The Trademark Company are same address on Google local business search (**Exhibit G-1**), and on the trademark filing for the name mark TTC Business Solutions  (**Exhibit G-2**).

[7] Matthew H. Swyers is listed as having active Bar memberships in D.C. and Virginia on Avvo.com, see **Exhibit Q**.  Searches on the Virginia Bar website did not find Matthew Swyers, but mentions that some members are removed if they choose to remain unlisted.  The D.C. Bar search appears down for maintenance as of December 26, 2017.

Cary, NC 27518-7172.

13.  DOES 1-50 are entities that participated in the transactions complained of herein in ways which are unknown to Plaintiffs.  The true names, capacities, nature, and extent of participation in the alleged activities by DOES 1-50, inclusive, are unknown to Plaintiffs and therefore Plaintiffs sue these Defendants by such fictitious names.   Plaintiffs will amend the complaint to allege their true names and capacities when ascertained.

## **BACKGROUND OF THE PARTIES**

14.  Plaintiff LegalForce RAPC Worldwide is a law firm wholly owned by Plaintiff Raj Abhyanker, a member in good standing of the State Bar of California, and the United States Patent Bar.   The Firm practices patent and trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, and a law office at 446 E. Southern Avenue Tempe Arizona 85282.

15.  The website Trademarkia.com was created by the law firm of LegalForce RAPC Worldwide in 2009 but was spun off into a separate entity.   Plaintiff LegalForce RAPC Worldwide is the sole provider of legal services through the website Trademarkia.com with respect to trademark filings before the USPTO.

16.  LegalForce RAPC Worldwide employs, full time, more than ten (10) U.S. licensed trademark attorneys in its California and Arizona offices who

substantially limit their practice to trademark law before the USPTO, and who are supported by legal support staff globally including in India, China, Poland, the United Kingdom and South Africa.  LegalForce RAPC Worldwide represents more than 10,000 clients from all over the United States and world, including over a thousand clients from the State of California, hundreds of clients in the State of Arizona, and over a thousand clients the State of Texas.

17.  LegalForce RAPC Worldwide is the largest law firm filer of trademarks before the USPTO in each of the last five years.  The firm maintains interest on Lawyer Trust Account (IOLTA) trust accounts for all client funds, conducts robust conflict checks, and currently employs two former USPTO trademark examining attorneys.  It has never been disciplined by the USPTO, the State Bar of California, the State Bar of Arizona, or the State Bar of Texas.   At least two of its former attorneys are currently hired as USPTO trademark examining attorneys after leaving LegalForce RAPC, and a number of its former associate attorneys or legal assistants have been hired in trademark and IP departments of leading Big Law IP firms including Orrick, Perkins Coie, Pillsbury Winthrop, DLA Piper, and Wilson Sonsini Goodrich & Rosati as well as in legal departments at leading technology companies, including Google, Inc., Facebook, Inc., and Apple, Inc.

18.  Plaintiff LegalForce, Inc. is a Delaware corporation offering law firm

automation and free trademark search services through its website Trademarkia.com with a principal place of business at 1580 W. El Camino Real Suite 9, Mountain View California 94040.  The Chief Executive Officer (CEO) and co-founder of Plaintiff LegalForce, Inc. is Plaintiff Raj Abhyanker.  Plaintiff LegalForce, Inc. makes no revenue from preparation and filing on U.S. trademark applications.   It receives a flat monthly technology licensing revenue from Plaintiff LegalForce RAPC Worldwide independent of the legal services revenue secured by the firm LegalForce RAPC Worldwide through the Trademarkia.com website.

19.    Plaintiff Raj Abhyanker is a California licensed attorney practicing patent & trademark law before the USPTO with a principal place of business at 1580 W. El Camino Real Suite 10, Mountain View California 94040, is the sole shareholder of Plaintiff LegalForce RAPC Worldwide and is a CEO of Plaintiff LegalForce, Inc.  In 2013, he was named an American Bar Association Journal "Legal Rebel," an "annual honors program for the change leaders of the legal profession"[8] and a member of the Fastcase 50, an annual award that "recognizes 50 of the smartest, most courageous innovators, techies, visionaries, and leaders in the law."[9]

20.    TTC Business Solutions, LLC is a North Carolina corporation ("The

---

[8] http://www.abajournal.com/magazine/article/2013_legal_rebels_a_banner_year
[9] http://www.fastcase.com/fastcase50-winners-2013.

Trademark Company") with a principal place of business at 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.  TTC Business Solutions, LLC is not a law firm in the United States and is not authorized to practice law in any state.  TTC Business Solutions, LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

21. Defendant Amy Reynolds ("Reynolds") is a covert owner of TTC Business Solutions, LLC upon reason and belief[10] having a principal place of business at 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.

22. The Trademark Company, LLC is a North Carolina corporation (also referred collectively with TTC Business Solutions, LLC as "The Trademark Company") with a principal place of business at the same address of 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.  The Trademark Company, LLC is not a law firm in the United States and is not authorized to practice law in any state.  The Trademark Company, LLC is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

23. Defendant Matthew Swyers ("Swyers") is the owner of The Trademark Company, LLC and a covert owner or stakeholder of TTC Business Solutions, LLC upon reason and belief[11], and continues to be a licensed attorney in Virginia

---

[10] Amy Reynolds is listed as the principal member of TTC Business Solutions, LLC on the BBB profile shown in **Exhibit P**.  Last checked **December 26, 2017**.
[11] Matthew Swyers is listed as the "Manager" of TTC Business Solutions, LLC (**Exhibit M**).   Matthew

and the District of Columbia[12], despite being excluded from practice before the USPTO, having a principal place of business at 2703 Jones Franklin Rd Ste 205, Cary, NC 27518-7172.

## JURISDICTION AND VENUE

24.   This Complaint arises under the laws of the United States, 15 U.S.C. §1125 *et seq.*  This Court has original jurisdiction of this action under 28 U.S.C. §1331 because at least some of the claims alleged herein arise under federal law. This Court has supplemental jurisdiction under 28 U.S.C. §1367 over any non-federal claims because such claims are so related as to form part of the same case or controversy.  Moreover, Plaintiffs have standing to their California state claims under the California Business and Professions Code in accordance to California appellate case law in *Higbee v. Expungement Assistance Services*.[13]

25. This Court has personal jurisdiction over The Trademark Company Entities because the defendants solicit, transact and does business in California

Swyers's work address and that for TTC Business Solutions, LLC and the  The Trademark Company are same address on Google local business search (**Exhibit G-1**), and on the trademark filing for the name mark TTC Business Solutions  (**Exhibit G-2**).

[12] Matthew H. Swyers is listed as having active Bar memberships in D.C. and Virginia on Avvo.com, see **Exhibit Q**.   Searches on the Virginia Bar website did not find Matthew Swyers, but mentions that some members are removed if they choose to remain unlisted.  The D.C. Bar search appears down for maintenance as of December 26, 2017.

[13] 214 Cal. App. 4th 544 *; 153 Cal. Rptr. 3d 865 **; 2013 Cal. App, in which the court concluded that the attorney alleged an identifiable trifle of injury sufficient to withstand a demurrer. The attorney alleged that he suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the provider's unlawful business practices. To have standing under the UCL, the attorney was not required to have engaged in business dealings with the provider. The court saw no reason why the alleged violation of statutes concerning the unauthorized practice of law could not serve as a predicate for the attorney's UCL action. According to the attorney, the provider's unlawful business practices had taken customers away from him.

and this District via its website and at least one toll-free telephone number, a substantial part of the wrongful acts or omissions complained of herein occurred in this District, and the Defendants are subject to personal jurisdiction in this District.   The Trademark Company Entities purposefully directed its activities toward this District when it willfully and specifically targeted consumers here and a substantial part of the harm was felt in this District.

26.   Venue is proper in the United States District Court for the Northern District of California under 28 U.S.C. §§ 1391 (b) and (c).

## **HARM TO PUBLIC INTEREST**

27. Through its acts of preparing and filing trademarks, The Trademark Company Entities harm the  "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers.

28. Since TTC Business Solutions, LLC is not a "law firm", then it is necessarily a non-lawyer that operates beyond the reach of protections built into the legal profession. Because regulatory protections are built into the legal profession, but no regulatory protections are in place for online legal services, consumers are worse off getting bad legal advice from TTC Business Solutions, LLC than from Plaintiff.

29.   Unabashedly, despite its owner Swyers being excluded from practice

before the USPTO, The Trademark Company continues to file trademarks before the USPTO causing great harm to the public and the Plaintiffs.    The United States Patent and Trademark Office ("USPTO") is charged with not only regulating intellectual property issues, but also with ensuring the integrity and fairness of the system itself – including those practitioners who represent the intellectual property interests of others before the USPTO.

30. To this end, as the Federal Circuit has held, Congress and the USPTO have created a comprehensive scheme governing the regulation of those practitioners, including a process by which the USPTO investigates the conduct of a practitioner, and if necessary, the Director of USPTO's Office of Enrollment and Discipline ("OED") files and ultimately prosecutes charges of unprofessional conduct. That scheme provides a practitioner with extensive procedural protections, including the ability to present oral testimony and written evidence before an independent hearing examiner on the record, and an avenue for administrative and judicial review of any adverse decision. (See **Exhibit N-2**).

31. Defendant Matthew Swyers is a practitioner who has represented thousands of individuals and entities before the USPTO in trademark matters. After an investigation into his conduct as a trademark practitioner by the USPTO, and a finding of probable cause to believe he had engaged in substantial

misconduct by an independent committee of USPTO officials (See **Exhibit N-2**), the Director of the Office of Enrollment and Discipline for the USPTO filed  on March 11, 2016 a lengthy fifty-six (56) page complaint against The Trademark Company that presents eight separate counts of violations of USPTO's professional responsibility rules.[14]

32. That complaint alleged eight separate counts against The Trademark Company:

> **Count I** – assisting others in engaging in the unauthorized practice of law; failure to review trademark applications and other trademark documents before filing; misrepresentations to clients;

> **Count II** – directing or allowing non-lawyer employees to sign or forge Matthew Swyers name to trademark applications and other trademark documents filed in the Office, in violation of the USPTO signature and certification rules;

> **Count III** – directing or allowing employees to sign or forge Matthew Swyers name to Section 2(f) declarations filed with the Office;

> **Count IV** – filing with the Office fraudulent or digitally altered specimens which did not reflect the mark's use in commerce; failure to inform the Office or clients or false or fraudulent specimens; failure to remedy or offer restitution;

> **Count V** –misrepresentation on website that a lawyer would prepare and review documents; collecting fees for trademark work done by non-lawyers

---

[14] Substantially quoted from USPTO's own Memorandum of Law, See **Exhibit N-2**.

when representing to clients that a lawyer would do the work.

**Count VI** – failure to deposit client funds paid in advance into a client trust account;

**Count VII** – impermissibly sharing legal fees with non-practitioners;

**Count VIII** – witness tampering; failure to respond to lawful requests for information or cooperate with OED.

33.  More specifically, the complaint alleges, inter alia, that Swyers "directed or allowed non-lawyer employees of The Trademark Company to electronically sign or forge Swyers electronic signature to his clients' trademark application," and that Swyers had "admitted to OED that he did not review the trademark applications before they were filed."   The complaint also alleges that The Trademark Company employees filed fraudulent specimens (i.e., those that were not actually being used in commerce) in support of trademark regulations that at least two of Swyers former clients had provided evidence corroborating that The Trademark Company's employees had created and filed fraudulent specimens with the agency.

34. In order to evade further public scrutiny, Swyers entered into a consent order to exclude himself from practice with the USPTO on January 26, 2017. (See **Exhibit H**).

35. Despite being excluded from practice before the USPTO for submitting fraudulent specimens and failing to supervise trademark assistants on January

26, 2017[15], it appears that attorney Matthew Swyers continues to file trademarks and unfairly compete with the Plaintiffs through his resurrected his "The Trademark Company" website in a different domain having the same logo, look and feel, and trade dress.[16]

36. This new website is https://www.ttcbusinesssolutions.com/.  Swyers even eludes to "The Trademark Company" name through the abbreviation "TTC", claiming its goodwill of 14 years, and continuing forward his unauthorized practice of law with a different entity purportedly controlled by a different individual Amy Reynolds.[17]

37. Upon reason and belief, Amy Reynolds is a *"straw woman"*[18] not involved in the day to day operations of TTC Business Solutions, LLC or The Trademark Company. Amy Reynold is not even listed as affiliated with the company on the public website or on external websites.  She maintains no LinkedIn profile affiliated with any entity of The Trademark Company.  In contrast, Matthew Swyers is listed as the "Manager" of TTC Business Solutions, LLC (**Exhibit M**).    Matthew Swyers's work address and that for TTC Business Solutions, LLC and the  The Trademark Company are same address on Google

---

[15] See **Exhibit H**, Final Order excluding Matthew H. Swyers from practice before the USPTO.
[16] For example, compare **Exhibit C-1** for "TTCBusinessSolutions.com with **Exhibit C-2** for TheTrademarkCompany.com"
[17] For example, on the About Us page for www.ttcbusinesssolutions.com, Swyers refers to the history of TTC Business solutions dating back from 1999, when TTC Business Solutions LLC was not even yet formed, upon reason and belief.  See **Exhibit E-1** v. **Exhibit E-2**.
[18] From "*straw man*", or "an intentionally misrepresented proposition that is set up because it is easier to defeat than an opponent's real argument."

local business search (**Exhibit G-1**), and on the trademark filing for the name mark TTC Business Solutions  (**Exhibit G-2**).

38. Moreover, despite being excluded from practice before the USPTO, Matthew Swyers continues to represent to the public that he is a "Copyright and Trademark Attorney" and "Principal and General Counsel" for The Trademark Company on his LinkedIn profile.   (**Exhibit G-3**).

## ETHICS RULES RELEVANT TO ALL CLAIMS

### I. USPTO'S DEFINITION OF UNAUTHORIZED PRACTICE OF LAW FOR TRADEMARK MATTERS BEFORE THE USPTO.

39.   Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document. (**Exhibit A**).

40.   Preparing or prosecuting an application, response, post-registration maintenance document, or other related document.  (**Exhibit A**).

### II.  USPTO'S DEFINITION OF LEGAL ADVICE FOR TRADEMARK MATTERS BEFORE THE USPTO.

41.  Conducting pre-filing searches for potentially conflicting trademarks. (**Exhibit B**).

42.  Analyzing or pre-approving documents before filing.  (**Exhibit B**).

43.  Advising applicants on substantive examination issues, such as the

acceptability of specimens and classification of goods and services.  (**Exhibit B**).

III.  APPLICABLE RULES AND REGULATIONS ON THE PRACTICE OF

LAW BEFORE THE USPTO.

USPTO RULES

44. **37 CFR §11.503 – Duty to supervise non-lawyers.**  With respect to a

non-practitioner assistant employed or retained by or associated with a

practitioner: (b) A practitioner having direct supervisory authority over the

non-practitioner assistant shall make reasonable efforts to ensure that the

person's conduct is compatible with the professional obligations of the

practitioner; and (c) A practitioner shall be responsible for conduct of such a

person that would be a violation of the USPTO Rules of Professional Conduct if

engaged in by a practitioner if: (1) The practitioner orders or, with the

knowledge of the specific conduct, ratifies the conduct involved.

45. **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall

not practice law in a jurisdiction in violation of the regulation of the legal

profession in that jurisdiction, or assist another in doing so.

46. **37 CFR §11.107 – Conflict of interest.**    (a) Except as provided in

paragraph (b) of this section, a practitioner shall not represent a client if the

representation involves a concurrent conflict of interest. A concurrent conflict of

interest exists if:  (1) The representation of one client will be directly adverse to

another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

47. **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

48. **37 CFR §11.18 – Signature and certification for correspondence filed in the Office.** (a) For all documents filed in the Office in patent, trademark, and other non-patent matters, and all documents filed with a hearing officer in a disciplinary proceeding, except for correspondence that is required to be signed by the applicant or party, each piece of correspondence filed by a practitioner in the Office must bear a signature, personally signed or inserted by such practitioner, in compliance with § 1.4(d) or § 2.193(a) of this chapter.

49. There are other counterpart state court rules in before the California State Bar and State Bar of Texas, not reprinted here, with largely similar restrictions.

///

CALIFORNIA CIVIL CODE

50. **California Business and Profession §6125 – Unlawful Practice of Law.** No person shall practice law in California unless the person is an active member of the State Bar.

IV.  THE TRADEMARK COMPANY ENTITIES VIOLATE UNAUTHORIZED PRACTICE OF LAW RULES OF THE USPTO AND PROVIDES LEGAL ADVICE TO CUSTOMERS FOR UNITED STATES TRADEMARKS.

51. Plaintiffs requested the filing of a trademark application (order # 21927) through the TrademarkEngine.com website on **December 5, 2017**.   Email addresses of raj@legalforcelaw.com for customer RAJ ABHYANKER was used.

52. A real trademark related to business of Plaintiffs was used for EVEREST CLAY REALTORS was applied for federal registration through the The Trademark Company website.    Everest Clay Realtors is trade name of a real estate brokerage and investment firm started by Plaintiff Raj Abhyanker.[19]  The conversations with The Trademark Company's non-attorney Trademark Document Specialists were audio recorded.   Both North Carolina and Arizona (from where calls were made) are one party recording states, as is federal law for interstate calls.  A transcripts of these recordings are found in **Exhibit D**.

---

[19] Plaintiff Raj Abhyanker is also a licensed California Real Estate Broker.

53.  For the prospective trademark, EVEREST CLAY REALTORS, The Trademark Company provided legal advice to Plaintiffs by selecting classification and agreeing to modify the goods and services description from the template thereby applying specific law to facts.  Specifically, The Trademark Company's non-attorney representative "Tiffany L. Mays" suggested class 35 to the Plaintiff and suggested that search results would be reviewed and analyzed prior to filing during a phone session (**Exhibit D**).

54. The Trademark Company never filed Plaintiff Raj Abhyanker's mark as of December 27, 2017 and has stopped responding to the Plaintiff's emails for update.

55. Although The Trademark Company represents on its website that it does not practice law, this representation is false and/or misleading.  The Trademark Company collects both its services fee for a non-attorney filing and later pays $275 in government fees on behalf of each customer, upon reason and belief (**Exhibit D**).  Moreover, after a trademark filing request is made on the The Trademark Company website, The Trademark Company practices law per the USPTO definition in critical steps in which classification of trademarks are determined, the description of goods and services are adjusted, and search results are reviewed with customers, upon reason and belief.

56. The Trademark Company admits on the recorded audio conversation

where agent "Tiffany L. Mays" admits that when she selected classification, and said she would help by modifying goods and services, and filing a trademark with the USPTO after reviewing there are no conflicting marks, and then paying government fees on behalf of Plaintiff Abhyanker. (**Exhibit D**).

57. The Trademark Company violates a number of clear boundaries for practice of law, including:

a. **Consulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document and Advising applicants on substantive examination issues, such as the acceptability of specimens and classification of goods and services. (Exhibits A and B)**

i.    With respect to the EVEREST CLAY REALTORS mark, the non-lawyer trademark document assistant named The Trademark Company admits on the recorded audio conversation where non-attorney agent "Tiffany L. Mays" selected classification, and said she would help by modifying goods and services, and filing a trademark with the USPTO after reviewing there are no conflicting marks, and then paying government fees on behalf of Plaintiff Abhyanker. (**Exhibit D**).

b.    **Preparing or prosecuting an application, response, post-registration maintenance document, or other related document.**

**(Exhibit A).**

i.    With respect to the EVEREST CLAY REALTORS mark, the non-lawyer trademark document assistant named The Trademark Company admits on the recorded audio conversation where non-attorney agent "Tiffany L. Mays" selected classification, and said she would help by modifying goods and services, and filing a trademark with the USPTO after reviewing there are no conflicting marks, and then paying government fees on behalf of Plaintiff Abhyanker. (**Exhibit D**).

c.    **Conducting pre-filing searches for potentially conflicting trademarks. (Exhibit B).**

Particularly, non-lawyer assistants at The Trademark Company said they would prepare pre-filing searches for potentially conflicting marks for EVEREST CLAY REALTORS without attorney review.  (**Exhibit D**).

d.    **Analyzing or pre-approving documents before filing.  (Exhibit B).**

The Trademark Company admits analyzes and pre-approves during a critical step of "class selection and description modification step" (**Exhibit D**).  Specifically, the non-lawyer trademark document assistant named The Trademark Company admits on the recorded audio conversation where non-attorney agent "Tiffany L. Mays" selected classification, and said she

would help by modifying goods and services, and filing a trademark with the USPTO after reviewing there are no conflicting marks, and then paying government fees on behalf of Plaintiff Abhyanker. (**Exhibit D**).

40.     Upon reason and belief, The Trademark Company performs the "Modification Step" to ensure that it does not file ineffectual trademark applications that are highly likely to get rejected by the USPTO.  It seems, upon reason and belief, The Trademark Company's non-lawyer staff are not well trained to provide this legal advice.

58.  Upon reason and belief, after The Trademark Company's Trademark Document Specialists provide critical legal advice during this Modification Step, the mark proceeds to the "trademark search" phase.  Upon reason and belief, the "trademark search" phase is again performed non-lawyer staff without review by licensed attorneys in violation of the USPTO's practice of law definition in **Exhibits A and B**.  After the search is delivered by non-attorney staff to the customer (**Exhibit D**), the phone support of The Trademark Company in the post trademark search step provide legal advice by advising customers by giving them advice as to which specific trademarks in the search report are more likely to block a registration upon reason and belief.

59.  After the customer approves the search report, The Trademark Company enters the customer's information directly into the USPTO website and requests

a link from the USPTO to the signature form using an internal The Trademark Company non-attorney staff's email ID. (**Exhibit D**).  While the Plaintiff's mark was stalled in the process, upon reason and belief based on admissions in the audio call in **Exhibit D**, Trademark Company unilaterally waives privacy protections and underlying copyright publication rights to the USPTO. Specifically, The Trademark Company's non-lawyer staff again go to a different USPTO link emailed to The Trademark Company by the USPTO which expressly waives each customer's right to privacy and has The Trademark Company attest that The Trademark Company has the authority to grant the USPTO permission to make information submitted available on its online database regardless of the underlying copyrights, upon reason and belief (**Exhibit W**).   On this same form, The Trademark Company pays the government fee to the USPTO on its own The Trademark Company credit card and/or deposit account with the USPTO, upon reason and belief.

60. Moreover, upon reason and belief, The Trademark Company maintains no client trust account (IOLTA account) for trademark matters, uses non-lawyer assistants to evaluate specimens of use in commerce for authenticity, and performs no conflict checks against other customers.

61. In contrast, as a law firm, Plaintiff LegalForce RAPC Worldwide and its licensed attorneys must conduct conflict checks with existing clients prior to

taking on representation of prospective clients.[20]   It must place client funds in an

IOLTA trust account prior to work being started.[21]   It must hire U.S. licensed

attorneys to counsel clients on trademark classification selection, modifying

description of goods and services, and reviewing specimens provided by its

clients for completeness and applicability to the selected classification.[22]

62. If Plaintiff LegalForce RAPC Worldwide and its licensed attorneys were

to adopt a similar model as The Trademark Company, it is very likely that the

firm and its licensed attorneys would be disbarred and/or excluded from

practicing law by the USPTO, any state in which they are licensed by a State

Bar.

63. This is a real threat.    While Matthew Swyers ("Swyers"), a former

USPTO trademark examining attorney in private practice and founder of The

Trademark Company, is excluded for practice by the USPTO (**Exhibit H**), he

continues to unfairly compete with the Plaintiffs as outlined in this Complaint.

In addition, another attorney Tracy W. Druce ("Druce") was suspended for

---

[20] **37 CFR §11.107 – Conflict of interest.**   (a) Except as provided in paragraph (b) of this section, a practitioner shall not represent a client if the representation involves a concurrent conflict of interest. A concurrent conflict of interest exists if:  (1) The representation of one client will be directly adverse to another client; or (2) There is a significant risk that the representation of one or more clients will be materially limited by the practitioner's responsibilities to another client, a former client or a third person or by a personal interest of the practitioner.

[21] **37 CFR §11.115 - IOLTA trust account.** A practitioner shall hold property of clients or third persons that is in a practitioner's possession in connection with a representation separate from the practitioner's own property. Funds shall be kept in a separate account maintained in the state where the practitioner's office is situated, or elsewhere with the consent of the client or third person.

[22] **California Business and Profession §6125 – Unlawful Practice of Law**.  No person shall practice law in California unless the person is an active member of the State Bar.  **37 CFR §11.505 – Unauthorized Practice of Law.**  A practitioner shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so.

failure to supervise assistants even though the lawyer did not know of the conduct of his assistants signing documents on his behalf (**Exhibit I**). Moreover, the USPTO also excluded from practice Leonard Tachner ("Tachner"), who, was a suspended attorney whose corporation prepared and filed trademark applications while he was suspended on the grounds of unauthorized practice of law. (**Exhibit J**).

64. Despite being excluded from practice, the USPTO and State Bars continue to permit The Trademark Company Entities to file trademarks before the USPTO. This double standard is a great injustice that harms both attorneys and the public at large.  Attorneys who have spent years going through law school, abiding by the rules, taking a difficult bar exam, maintaining an IOLTA trust account, and performing conflict checks **cannot** effectively compete against non-law firm competitors like The Trademark Company on an even playing field.  It also lowers the standard of service to the public because The Trademark Company customers rely on the legal advice given by non-attorneys. For these reasons, an injunction and damages false advertising, unfair competition, malpractice, and other causes of action are sought.

V.  THE TRADEMARK COMPANY ENTITIES' MISLEADING GOOGLE, BING, AND OTHER ONLINE ADVERTISING IS DAMAGING TO PLAINTIFFS' GOODWILL AND MISLEADING TO THE PUBLIC WITH

FALSE COMPARISONS TO ATTORNEY LED SERVICES, AS SUCH

ACTIONS CAUSING IRREPARABLE HARM TO PLAINTIFFS.

65. Plaintiff LegalForce RAPC Worldwide and Defendant The Trademark Company (ttcbusinesssolutions.com) continue to among the largest purchasers of online advertising including on Google and Bing per month for "trademark filing" and "trademark registration" related search terms, despite Swyers exclusion from practice. (**Exhibit L**).   The Trademark Company even boasts as of filing this Complaint, that that they are "#1 in Trademark Registrations" (**Exhibit S**, last checked December 26, 2017) which is an untrue and misleading statement.   More shockingly, despite Swyers being excluded from practice, The Trademark Company misleads the public by saying that that were "Created by former USPTO Attorneys", portraying this as a benefit without saying that former USPTO examining attorney and founder Swyers is excluded from practice.  (**Exhibit S**, last checked December 26, 2017)

66. Upon reason and belief, The Trademark Company's non-attorney trademark filing service has threatened, and continues to threaten, Plaintiff LegalForce RAPC's business directly by competitively bidding against Plaintiff LegalForce RAPC Worldwide on Google and Bing for the keywords during the year 2017 through deceptive advertising which are predicated on the unauthorized practice of law.  (**Exhibit L**).

67. The Trademark Company is not a law firm or authorized to practice law in any state.  Moreover, upon reason and belief, The Trademark Company is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

68. Despite not being a law firm and despite not hiring any attorneys representing external clients, The Trademark Company purchases advertisements whenever consumers search terms related to the practice of trademark law including "trademark filing" and "trademark registration".  The advertising copy in the resulting advertisements is highly misleading, leading a consumer to believe that he or she will be represented by an attorney.

69. In contrast, rules for mandatory conflict checks, attorney client privilege, and storing client funds in IOLTA accounts have been adopted by every State Bar, for the explicit purpose of protecting clients. The Trademark Company boasts about eschewing these long standing client protections.  While not having power of attorney, not holding attorney client privilege, and not conducting conflict checks, yet still providing legal advice, The Trademark Company's advertising copy is explicitly designed to wrongfully imply that its services are comparable to that of the Plaintiffs.

**CAUSES OF ACTION**

**FIRST CLAIM FOR RELIEF**
FEDERAL FALSE & MISLEADING ADVERTISING AND UNFAIR

COMPETITION IN VIOLATION OF THE FEDERAL TRADE
COMMISSION ACT, 15 U.S.C. § 45, 15 U.S.C. § 52, 15 U.S.C. § 53
(Against all Defendants and DOES 1-50)

70. Plaintiffs incorporate herein by reference paragraphs **1-69** above.

71. Through its acts of preparing and filing trademarks, The Trademark Company harms the "public interest" in that public consumers become susceptible to the risk of bad legal advice dispensed by unlicensed, un-trained, and uninformed non-lawyers.

72. Since The Trademark Company is not a "law firm", then it is necessarily a non-lawyer that operates beyond the reach of protections built into the legal profession. Because regulatory protections are built into the legal profession, but no regulatory protections are in place for online legal services, consumers are worse off getting bad legal advice from The Trademark Company than from Plaintiff.

73. The Plaintiffs are bound to the rules governing the legal profession and USPTO, and that those rules are designed to protect consumers. If it in fact achieves what it sets out to disclaim, The Trademark Company's disclaimer and terms of use demonstrate that there is some merit to the argument that limiting the practice of law to lawyers benefits consumers by guaranteeing protections built into the legal profession.

74. Consider the following excerpt directly from the home page of The Trademark Company's website the Terms and Conditions page (**Exhibit V**):

a.  At no time do we review your answers for legal sufficiency, draw legal conclusions, provide legal advice, opinions or recommendations about your legal rights, remedies, defenses, options, selection of forms, or strategies, or apply the law to the facts of your particular situation. (**Exhibit V**).

b.  TTC Business Solutions is not a law firm and may not perform services performed by an attorney. (**Exhibit V**).

c.  TTC Business Solutions, its services, and its forms or templates are not a substitute for the advice or services of an attorney. (**Exhibit V**).

d.  By renouncing the attorney-client relationship and purporting to provide legal information rather than legal advice, The Trademark Company hopes to achieve two business advantages at the expense of consumers: (1) sidestepping professional responsibilities governing the legal profession and (2) avoiding liability.   Inconsistently, it says "If you believe you have received any legal services or advice from us, you will not make your purchase", despite providing legal advice only after making a purchase on its website.(**Exhibit V**).

75. The Plaintiffs' emphasize that The Trademark Company avoids the responsibilities of law practice by characterizing its services as "self-help" for pro se litigants and maintaining that the website cannot substitute for an

attorney, without regard to any understandable assumptions otherwise.   The

Trademark Company's employees are trained to disseminate legal "advice."

Despite this, if taken at face value, The Trademark Company's disclaimer and

terms of use allow it to operate free from the confines of ethical rules

enforceable upon attorneys.

76. Plaintiffs further argue that by falling outside the existing regulatory space

for legal services—where regulations are designed by and applied to licensed

lawyers—The Trademark Company Entities deny consumers redress that they

would otherwise have for faulty legal advice.

77. For example, communications with the The Trademark Company's

website are protected only by the company's Privacy Policy, not the

attorney-client privilege or work product doctrine of Plaintiff LegalForce RAPC

Worldwide.  The Trademark Company has no duty of confidentiality, which

would otherwise prevent an attorney from revealing information relating to the

representation.  Under the existing regulatory structure, The Trademark

Company also operates beyond the reach of comparable disciplinary authorities

for charging an unreasonable fee1 or obtaining consent for representing clients

with conflicts of interest.

78. Deceptive advertising is another particularly relevant problem for many

customers using The Trademark Company.  Plaintiffs' argue that if The

Trademark Company were a law firm, its practices would be disciplined by potential violations for communicating false or misleading information about its services.

79. Moreover, Plaintiffs points out that The Trademark Company limits its own liability for problems arising from its services in ways impermissible for practicing lawyers. By operating outside the professional rules, The Trademark Company bypasses the duties of competence and diligence required of all lawyers practicing law—duties which, if violated, could give teeth to malpractice actions.

80. A comprehensive liability limitation clause requires that customers hold The Trademark Company and its officers, directors, employees, and agents harmless for any indirect, punitive, special, incidental, or consequential damage, except as prohibited by law.   Without a lawyer to fall back on, customers relying on The Trademark Company may sometimes fail to comply with jurisdiction-specific requirements, resulting in an increase of reliance on lawyers conducting post-mortem fixes to remedy problems.  Though the disclaimer is not guaranteed to waive The Trademark Company of all liability, it makes it more difficult for clients to avoid shouldering liability for costly errors in legal documentation.

81. The Federal Trade Commission Act prohibits any unfair methods of

competition in or affecting commerce, and unfair or deceptive acts or practices

in or affecting commerce, and declares such acts or practices unlawful.

82. The Trademark Company is not a law firm in the United States and is not

authorized to practice law in any state.  The Trademark Company is not a

registered or bonded legal document assistant under California Business and

Professions Code, sections §6400 et seq.

83. The Federal Trade Commission Act prohibits false and misleading

advertising and prohibits advertisers like The Trademark Company from making

any claim, and directly or indirectly, in words or in substance, qualified or

unqualified, that contain express or implied falsehoods.

84. The Trademark Company has threatened Plaintiff LegalForce RAPC

Worldwide's business directly by misleading consumers and unfairly competing

with Plaintiffs for the keywords "trademark filing", "trademark registration"

among hundreds of other keywords.   The conduct is unfair and unethical

because The Trademark Company makes a number of false and misleading

statements in its advertising copy.

85. As described above, The Trademark Company has made false and/or

misleading statements of fact concerning the non-attorney nature of its services

and products in its online advertising and promotion, while giving legal advice

through non-attorneys and covertly hiding the identity of its owner attorney

Swyers.  Moreover, The Trademark Company had misled consumers by :

A.    Representing that customers that they are "#1 in Trademark Registrations" which is a false statement and "Created by former USPTO Attorneys" as if it were a benefit to have excluded from practice lawyers, while bidding on keywords including "trademark filing", "trademark registration", and misdirecting users to their non-attorney guided trademark filing service.  In fact, none of The Trademark Company's employees preparing trademark filings are licensed trademark professionals of any kind, much less attorneys. (**Exhibit S**)

B.    The Trademark Company uses the search terms "trademark filing", "trademark registration" to redirect customers to The Trademark Company's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce. As a result, The Trademark Company has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Federal Trade Commission Act.

86. The Trademark Company's non-attorney, unlicensed trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

87. The Trademark Company's false and misleading advertisements have deceived a substantial segment of the audience exposed to it, or have the capacity for such deception, and have influenced, or are likely to influence, consumer purchasing decisions.

88. The Trademark Company sells, offers for sale, distributes, and/or advertises goods and services to consumers that directly compete with Plaintiffs' sales of their own services and products.

89. The Trademark Company's conduct demonstrates an intentional, willful, and malicious intent to deceive consumers and unfairly compete with Plaintiffs.

90. The Trademark Company's false and misleading advertisements have caused and, unless enjoined, will continue to cause immediate and irreparable harm to Plaintiffs for which there is no adequate remedy at law.   In addition, as a result of The Trademark Company's false and misleading advertisements, Plaintiffs have been injured, including but not limited to, decline in sales and market share, loss of goodwill, and additional losses and damages.  Furthermore, The Trademark Company has been unjustly enriched at the expense of Plaintiffs as a consequence of The Trademark Company's false and misleading advertising.  Accordingly, Plaintiffs are entitled to injunctive relief and to recover actual damages, enhanced profits and damages, costs, The Trademark Company's profits, and reasonable attorneys' fees under 15 U.S.C. §§ 1114,

1116, and 1117.

## SECOND CLAIM FOR RELIEF
CALIFORNIA UNFAIR COMPETITION IN VIOLATION OF
CAL. BUS. & PROF. CODE § 17200 ET SEQ.
(Against all Defendants and DOES 1-50)

91. Plaintiffs incorporate herein by reference paragraphs **1-90** above.

92. The Trademark Company's false comparisons with Plaintiffs' attorney

managed U.S. trademark service as being comparable to The Trademark

Company's non-attorney service through misleading advertising, as alleged

above, constitute unfair competition in violation of Section §17200 *et seq.* of the

California Business and Professions Code.

93. The Trademark Company falsely represents that they are "#1 in

Trademark Registrations" which is a false statement and "Created by former

USPTO Attorneys" as if it were a benefit to have excluded from practice

lawyers, while bidding on keywords including "trademark filing", "trademark

registration", and misdirecting users to their non-attorney guided trademark

filing service. (**Exhibit S**)

94. The Trademark Company uses the search terms "trademark filing",

"trademark registration" to redirect customers to The Trademark Company's

false and misleading advertisements and to disseminate such false and

misleading advertisements in interstate commerce. As a result, The Trademark

Company has widely disseminated such false and misleading advertisements via

the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Section §17200 *et seq.* of the California Business and Professions Code.

95. The Trademark Company's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

96. As a result of The Trademark Company's wrongful acts, Plaintiffs have suffered and will continue to suffer loss of hundreds of thousands of dollars of income, profits and valuable business opportunities and if not preliminarily or permanently enjoined, The Trademark Company will have unfairly derived and will continue to derive income, profits and business opportunities as a result of its wrongful acts.

97. Pursuant to California Business and Professions Code Section §17200 *et seq.*, Plaintiffs seek an order of this Court preliminarily and permanently enjoining The Trademark Company from continuing to engage in the unlawful, unfair and fraudulent acts or practices set forth herein, as well as compensatory damages and restitution.

### THIRD CLAIM FOR RELIEF

CALIFORNIA FALSE & MISLEADING ADVERTISING IN VIOLATION OF

<u>CAL. BUS. & PROF. CODE § 17500 *ET SEQ.* and § 17600 *ET SEQ.*</u>
<u>(Against all Defendants and DOES 1-50)</u>

98. Plaintiffs incorporate herein by reference paragraphs **1-97** above.

99. The Trademark Company's false comparisons with Plaintiffs' attorney managed U.S. trademark service as being comparable to The Trademark Company's non-attorney service through misleading advertising, as alleged above, constitute unfair competition in violation of Section §17200 *et seq.* of the California Business and Professions Code.

100.   Beginning on a date unknown to Plaintiffs but likely within at least three years prior to the filing of the Complaint, The Trademark Company, acting directly or indirectly with the intent to induce members of the public to engage The Trademark Company's services and purchase The Trademark Company's products, made or caused to be made, in violation of Business and Professions Code Section §17500, untrue or misleading statements in the state of California via its website, that include, but are not limited to, the following:

101.   The Trademark Company falsely represents that they are "#1 in Trademark Registrations" which is a false statement and "Created by former USPTO Attorneys" as if it were a benefit to have excluded from practice lawyers, while bidding on keywords including "trademark filing", "trademark registration", and misdirecting users to their non-attorney guided trademark filing service. (**Exhibit S**)

102.   The Trademark Company uses the search terms "trademark filing", "trademark registration" to redirect customers to The Trademark Company's false and misleading advertisements and to disseminate such false and misleading advertisements in interstate commerce. As a result, The Trademark Company has widely disseminated such false and misleading advertisements via the internet to relevant purchasing public so as to sufficiently constitute commercial advertising under the Section §17200 *et seq.* of the California Business and Professions Code.

103.   The Trademark Company's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the United States Patent & Trademark Office, and filing trademarks before the United States Patent & Trademark Office.

104.   The Trademark Company is not a law firm in the United States and is not authorized to practice law in any state.  The Trademark Company is not a registered or bonded legal document assistant under California Business and Professions Code, sections §6400 et seq.

105.   The Trademark Company has threatened Plaintiff LegalForce RAPC Worldwide's business directly by misleading consumers searching Google and Bing for "trademark filing" and "trademark registration" to non-attorney

trademark landing pages.  This creates unfair competition for Plaintiffs which file all trademarks of their clients before the USPTO with representation by licensed attorneys at LegalForce RAPC Worldwide's offices, in either California or Arizona.  The conduct is unfair and unethical because it misleads customers to selecting The Trademark Company's services instead of those of the Plaintiffs based on fraudulent premises.

106.   While using AdWords to trigger and disseminate the misleading advertisements herein alleged, The Trademark Company knew, or by the exercise of reasonable care should have known, that the advertisements were untrue and misleading and so acted in violation of Section §17500 of the Business and Professions Code.

107.   The Trademark Company's non-attorney trademark document specialists unlawfully assist customers with modifying goods and services descriptions, selecting classifications of trademarks to be filed before the USPTO, and filing trademarks before the USPTO.

108.   The Trademark Company has been unjustly enriched through its false and misleading advertising.

109.   Plaintiffs have lost business caused by the false and misleading The Trademark Company advertisements as a result of at least one customer refusing to do business with Plaintiffs due to the fact that The Trademark Company

advertisements falsely implying that The Trademark Company offers trademark filing services with the USPTO in an ethically compliant manner, upon reason and belief.

110.   Unless restrained by this court, The Trademark Company will continue with its untrue and misleading advertising, as alleged above, in violation of Section §17500 of the Business and Professions Code and in violation of Section §17509 of the California Business and Professions Code, thus, tending to render judgment in the instant action ineffectual and will cause additional injury to Plaintiffs for which Plaintiffs have no adequate remedy at law.

111.   Pursuant to California Business and Professions Code Section §17500, Plaintiffs seek an order of this Court preliminarily and permanently enjoining The Trademark Company from continuing to engage in the false and misleading advertising set forth herein, as well as compensatory damages and restitution.

112.   The Trademark Company's business practices and acts, fully described above, constitute an unlawful practice of law and create false and misleading impressions on potential clients of Plaintiff LegalForce RAPC Worldwide.

113.   The Trademark Company's business model and acts, including but not limited to its website and false and misleading advertising, constitute unfair practices, intentionally aimed at getting ahead of any competitors with lawful business conduct such as that of the Plaintiffs. The acts alleged herein continue

to present a threat to Plaintiffs and average consumers, especially the ones with limited resources.

114.   The Trademark Company's acts were, and are, likely to deceive an average consumer, and thus constitute unfair business practices as described herein.

115.   The Trademark Company has engaged in unlawful, unfair and fraudulent business practices and damaged the public and Plaintiffs through the conduct alleged herein.

116.   Plaintiffs are informed, believe, and thereupon allege that The Trademark Company's conduct as described herein was, and is, unlawful, unfair and/or fraudulent in violation of Section §17000 *et. sq.* of the California Business and Professions Code and has the potential to cause, and has in fact caused, confusion in the marketplace.

117.   Plaintiffs have been irreparably harmed and will continue to be irreparably harmed as a result of The Trademark Company's unlawful acts unless enjoined by this Court.

118.   The conduct herein complained of was extreme, outrageous, surreptitious, and was inflicted on Plaintiffs in reckless disregard of Plaintiffs' rights.

119.   Plaintiffs are entitled to an injunction restraining The Trademark

Company, and all persons acting in concert with them, from engaging in such further acts of unfair competition, including:

i.   Enjoining non-lawyer assistants of The Trademark Company to recommend and advise on selection of classifications of goods and services for trademark applications sought to be filed with the USPTO directly to customers, modify standard descriptions from the USPTO ID manual directly for customers and pay government fees on behalf of customers who are not represented by a lawyer.

ii.   Enjoining The Trademark Company from purchasing misleading advertising related to "trademark filing", "trademark registration", and related keywords for non-attorney trademark filing services offered by The Trademark Company with respect to U.S. trademark matters.

### FOURTH CLAIM FOR RELIEF
PROFESSIONAL NEGLIGENCE
(Against Defendant Swyers and DOES 1-50)

120.   Plaintiffs incorporate herein by reference paragraphs **1-119** above.

121.   The Trademark Company is not a law firm in the United States and is not authorized to practice law in any state.

122.   In addition, upon reason and belief, Defendant Swyers owed a duty to Plaintiff Raj Abhyanker when he collected more than $300 in legal service and government fees from Plaintiff Raj Abhyanker without depositing the funds into an IOLTA trust account and conducting a conflict check against existing

customers and adverse parties for the EVEREST CLAY REALTORS trademark through TTC Business Solutions LLC or The Trademark Company LLC.

123.   Defendant Swyers has breached that duty by purposefully engaging in the unauthorized practice of law with respect to the filing of the EVEREST CLAY REALTORS trademark on behalf of Plaintiff Raj Abhyanker while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that professional attorney help will be provided.

124.   Moreover, Defendant Swyers breached his duty to Plaintiff Raj Abhyanker by not supervising non-lawyer assistant Tiffany, and others who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for EVEREST CLAY REALTORS.

125.   In addition, Defendant Swyers and DOES 1-50, each of them owed a duty to Plaintiff Raj Abhyanker to act at all times in good faith and in Plaintiff Raj Abhyanker's best interests, and had a duty, among other things, to perform the services for which their corporate entity The Trademark Company was retained with reasonable care and skill to prepare and file the EVEREST CLAY REALTORS trademark, to act in the Plaintiff Raj Abhyanker highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary

risk or peril.

126.   By providing legal advice in the selection of classification and description of goods and services to Plaintiff Raj Abhyanker using non-lawyer assistants (**Exhibit D**),  and delaying filing after failing to respond to the Plaintiff Abhyanker for weeks, Defendant Swyers exposed Plaintiff Raj Abhyanker to risk or peril for their EVEREST CLAY REALTORS trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delaying and prolonging in the trademark application process, potentially leading to abandonment of the EVEREST CLAY REALTORS application, and jeopardizing the validity of any resulting registration.

127.   Defendant Swyers neglected fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.  Specifically, Defendant Swyers each failed to supervise a non-practitioner assistant employed or retained by or associated with The Trademark Company while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

128.   At all times mentioned here, Defendant Swyers failed to exercise the

required standard of care and by failing have jeopardized the validity of the

Plaintiffs' EVEREST CLAY REALTORS trademark.

129.   Further, as a direct and proximate result of the negligence, omissions,

and/or intentional acts of Defendant Swyers, Plaintiff Raj Abhyanker has

sustained damages, among other things loss in legal fees paid to The Trademark

Company in the amount of $324 and other amounts which will be determined

according to proof at trial.

**FIFTH CLAIM FOR RELIEF**
BREACH OF FIDUCIARY DUTIES
(Against Defendant Swyers and DOES 1-50)

130.   Plaintiffs incorporate herein by reference paragraphs **1-129** above.

131.   The Trademark Company is not a law firm in the United States and is

not authorized to practice law in any state.

132.   Upon reason and belief, Defendant Swyers breached his fiduciary duty

to Plaintiff Raj Abhyanker when he collected more than $300 in legal service

and government fees from Plaintiff Raj Abhyanker without depositing funds into

an IOLTA trust account and conducting a conflict check against existing

customers and adverse parties for the EVEREST CLAY REALTORS trademark

through TTC Business Solutions LLC or The Trademark Company LLC.

133.   In addition, Defendant Swyers has breached a fiduciary duty by

purposefully engaging in the unauthorized practice of law with respect to the

filing of the EVEREST CLAY REALTORS trademark on behalf of Plaintiff Raj Abhyanker while falsely implying that no legal advice was to be received in the "non-attorney" trademark filing service linked to a Google advertisements falsely implying that attorney help will be provided.

134.   Moreover, Defendant Swyers breached his fiduciary duty to Plaintiff Raj Abhyanker by not supervising non-lawyer assistant Tiffany as well as unknown others who provided legal advice including classification selection, description of goods and services modification, search report preparation, and search report analysis for the federal trademark applications for EVEREST CLAY REALTORS.

135.   In addition, Defendant Swyers and DOES 1-50, each of them owed a fiduciary duty to Plaintiff Raj Abhyanker to act at all times in good faith and in their best interests, and had a duty, among other things, to perform the services for which their corporate entity The Trademark Company was retained with reasonable care and skill to prepare and file the EVEREST CLAY REALTORS trademark, to act in the Plaintiffs' highest and best interests at all times, and to not expose Plaintiff Raj Abhyanker to unnecessary risk or peril.

136.   By providing legal advice in the selection of classification and description of goods and services to Plaintiff Raj Abhyanker using non-lawyer assistants (**Exhibit D**), and delaying filing after failing to respond to the Plaintiff

Abhyanker for weeks, Defendant Swyers exposed Plaintiff Raj Abhyanker to risk or peril for his EVEREST CLAY REALTORS trademark as described by the USPTO web page titled "Proper representation in trademark matters" (**Exhibit A**), including but not limited to (1) delay and prolong in the trademark application process, potentially leading to abandonment of the EVEREST CLAY REALTORS trademark applications, and jeopardizing the validity of any resulting registration.

137.   Defendant Swyers neglected fiduciary duties to Plaintiff Raj Abhyanker by failing to properly supervise legal assistants, paid search specialists, and/or on-page marketing specialists in violation of 37 CFR §11.503 – Duty to supervise non-lawyers.  Specifically, Defendant Swyers failed to supervise a non-practitioner assistant employed or retained by or associated with The Trademark Company while being responsible for conduct of such a person that would be a violation of the USPTO Rules of Professional Conduct if engaged in by a practitioner.

138.   At all times mentioned here, Defendant Swyers failed to exercise the required standard of care and by failing to have jeopardized the validity of the EVEREST CLAY REALTORS trademark application.

139.   Further, as a direct and proximate result of the negligence, omissions, and/or intentional acts of Defendant Swyers, Plaintiff Raj Abhyanker has

sustained damages, among other things loss in legal fees paid to The Trademark Company in the amount of $324 and other amounts which will be determined according to proof at trial.

### **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs pray judgment as follows:

1.  Temporary and permanent injunctions as defined herein be entered in their favor and against all Defendants, and any company or entity in which Defendants have an ownership or beneficial interest, first temporarily and then permanently restraining and enjoining them, directly or indirectly, on their own or as a partner, or an employee from operating websites known as https://www.ttcbusinesssolutions.com/, http://www.thetrademarkcompany.com/, http://www.thetrademarkcompany.co or any other website that attempts to offer any legal services requiring the practice of law including, but not limited to, U.S. trademark filing and prosecution services for office actions, statements of use, oppositions, trademark watch, renewal, opposition, and litigation services.

2.  From further acts of false and misleading advertising and unfair competition that would damage or injure Plaintiffs.

3.  The Court find The Trademark Company's acts of false and misleading advertising and unfair competition to be knowing and willful, and an

exceptional case within the meaning of 15 U.S.C. §1117 and California law.

4.  Restitution as allowed under applicable statutes.

5.  Compensatory damages in an amount believed to be in excess of three million dollars ($3,000,000) to be determined at trial.  Plaintiffs' damages are continuing each day as they are unable to compete fairly due to Defendant' unlawful actions, and they will seek treble recovery of all additional damages they incur during the pendency of this lawsuit.

6.  Punitive damages in an amount to be determined at trial.

7.  Legal and equitable further relief as this court finds just and proper.

8.  Permanent exclusion from practice of law before the USPTO and any State Bar including but not limited to the State of Virginia and District of Columbia, of defendant Matthew H. Swyers.

9.  Order compelling the USPTO to follow its stated procedures for notification to affected applicants of an excluded marks for all trademarks in which government fees were paid by the excluded party (**Exhibit X**) including, but not limited notifications to the affected applicant or registrant that:

      i.    The Trademark Company is not entitled to practice before the USPTO in trademark matters and, therefore, may not represent the applicant or registrant.

      ii.    Any trademarks and documents filed by The Trademark

Company are *void ab initio*, meaning they were invalid from the start of any action taken by the excluded party.

iii. The Trademark Company may not sign checkboxes, pay government fees, prepare trademark applications, assist with responses to the USPTO's actions, authorize examiner's amendments or priority actions, conduct interviews with USPTO employees, or otherwise represent an applicant, registrant, or party to a proceeding before the USPTO.

iv. All correspondence concerning the application or registration will be sent to the domestic representative if one has been appointed, or, alternatively, and in most circumstances, to the applicant or registrant at his/her address of record.

10. Plaintiffs be awarded costs, prejudgment interest and attorneys' fees pursuant to 15 U.S. Code § 7706 of the Federal Trade Commission Act for exceptional case, and other applicable statutes.

Respectfully submitted this Wednesday December 27, 2017.

LEGALFORCE RAPC WORLDWIDE P.C.

/s/ Raj V. Abhyanker
Raj V. Abhyanker

California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker

## **JURY TRIAL DEMAND**

Plaintiffs hereby request a jury trial for all causes of action alleged in this Complaint.

Respectfully submitted this Wednesday December 27, 2017.

LEGALFORCE RAPC WORLDWIDE P.C.

By    /s/ Raj V. Abhyanker
Raj V. Abhyanker
California State Bar No. 233,284
Attorney for Plaintiffs:
LegalForce RAPC Worldwide, P.C.,
LegalForce, Inc., and
Raj V. Abhyanker