IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE P.C., ET AL., <br><br> Plaintiffs, <br><br> v. <br><br> MATTHEW H SWYERS, et al., <br><br> Defendants. | Case No. 17-cv-07318-MMC <br><br> **ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS FIRST AMENDED COMPLAINT; AFFORDING PLAINTIFFS LEAVE TO AMEND; CONTINUING CASE MANAGEMENT CONFERENCE** <br><br> Re: Dkt. Nos. 37, 45, 69 |

Before the Court are three motions to dismiss plaintiffs' First Amended Complaint ("FAC"): (1) defendants TTC Business Solutions, LLC ("TTC") and Matthew Swyers' ("Swyers") (collectively, "TTC Defendants") Motion to Dismiss, filed April 18, 2018; (2) defendants The Trademark Company, LLC ("Trademark LLC") and The Trademark Company, PLLC's ("Trademark PLLC") (collectively, "Trademark Defendants") Motion to Dismiss, filed May 4, 2018; and (3) defendant United States Patent and Trademark Office's ("USPTO") Motion to Dismiss, filed June 15, 2018. The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

**BACKGROUND**

Plaintiffs allege that TTC operates a website known as "TTC Business Solutions" (see FAC ¶¶ 18, 42), and that said entity, as well as Trademark LLC, "provide[s] trademark related services" (see FAC ¶ 3). According to plaintiffs, TTC and Trademark

---
[1] By order filed June 19, 2018, the Court took under submission the motion filed by the TTC Defendants, as well as the motion filed by the Trademark Defendants. By order filed July 16, 2018, the Court took under submission the motion filed by the USPTO.

LLC have made "false and misleading" statements in "advertisements and promotional statements" (see FAC ¶¶ 3, 32), and have "engag[ed] in the unlawful practice of law" (see FAC ¶ 97).

Plaintiffs allege that Trademark PLLC, which operates or has operated a website known as "The Trademark Company," is a law firm that "provide[s] legal services in trademark related matters" (see FAC ¶ 19), and that Swyers, an attorney, is "the owner" of TTC, Trademark LLC, and Trademark PLLC (see FAC ¶ 17). According to plaintiffs, TTC, Trademark LLC, and Trademark PPLC are "alter egos" of Swyers. (See FAC ¶¶ 18-20.)

Plaintiffs allege that the USPTO, which "governs the conduct of U.S. state licensed attorneys and registered patent attorneys" practicing before it (see FAC ¶ 21), "prevents LegalForce RAPC from competing with [TTC and Trademark LLC]" (see FAC ¶ 11) by enforcing its "regulations" and "rules" against LegalForce RAPC but not against TTC and Trademark LLC (see FAC ¶ 120-121, 123).

On April 4, 2018, plaintiffs filed their FAC, asserting therein six Claims for Relief: (1) "Declaratory Relief"; (2) "False Advertising and Unfair Competition [under] the Lanham Act, 15 U.S.C. § 1125(a)"; (3) "California Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq."; (4) "California False & Misleading Advertising [under] Cal. Bus. & Prof. Code § 17500 et seq.; (5) "Violation of Substantive Due Process [under] U.S. Constitution amend. V"; and (6) "Violation of Equal Protection [under] U.S. Constitution amend. V."

The instant motions followed.

**LEGAL STANDARD**

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v.

1  Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).  Consequently, "a
2  complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual
3  allegations."  See id.  Nonetheless, "a plaintiff's obligation to provide the grounds of his
4  entitlement to relief requires more than labels and conclusions, and a formulaic recitation
5  of the elements of a cause of action will not do."  See id. (internal quotation, citation, and
6  alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party.  See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).  "Factual allegations must be enough to raise a right to relief above the speculative level[.]"  Twombly, 550 U.S. at 555.  Courts "are not bound to accept as true a legal conclusion couched as a factual allegation."  See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

**DISCUSSION**

In their respective motions, defendants argue that each of plaintiffs' claims is subject to dismissal.

**A. Federal Claims**

   **1. Lanham Act**

The Lanham Act prohibits any "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's goods, services, or commercial activities."  See 15 U.S.C. § 1125(a)(1).

In the Second Claim for Relief, asserted against defendants TTC, Trademark LLC, and Swyers only, plaintiffs allege that TTC and Trademark LLC, in violation of the Lanham Act, have "made false and misleading descriptions and representations of fact" in "commercial advertisements or promotions."  (See FAC ¶¶ 3, 85-86.)

3

### a. Standing

The TTC Defendants and the Trademark Defendants argue that plaintiffs have failed to allege sufficient facts to establish each plaintiff was injured by the alleged Lanham Act violations, and, consequently, that plaintiffs lack Article III standing.

"In a false advertising suit, a plaintiff establishes Article III injury if some consumers who bought the defendant's product under a mistaken belief fostered by the defendant would have otherwise bought the plaintiff's product." TrafficSchool.com, Inc. v. Edriver, Inc., 653 F.3d 820, 825 (9th Cir. 2011) (internal quotation, citation and alteration omitted). Where a plaintiff "can't produce lost sales data," the plaintiff can "establish an injury by creating a chain of inferences showing how defendant's false advertising could harm plaintiff's business." See id. Further, "when [the] plaintiff competes directly with [the] defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing." See id. at 827.

Here, plaintiffs allege that LegalForce RAPC "compete[s]" with TTC and Trademark LLC (see FAC ¶ 5), in that each of those three entities provides "trademark filing services" (see FAC ¶¶ 6, 60), i.e., that LegalForce RAPC is a direct competitor of TTC and Trademark LLC. Plaintiffs also allege that, as a result of TTC and Trademark LLC's assertedly "false advertising," LegalForce RAPC has "reduced" its prices "from $499 to $199" (see FAC ¶ 75), and thus has lost revenue. At the pleading stage, such allegations suffice to establish Article III standing as to LegalForce RAPC. See Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992) (holding that "[a]t the pleading stage general factual allegations of injury resulting from the defendant's conduct may suffice"; noting, "on a motion to dismiss [courts] presume that general allegations embrace those specific facts that are necessary to support the claim").

By contrast, plaintiffs do not allege that LegalForce competes with TTC or Trademark LLC, and do not allege any facts to support a finding that LegalForce has lost revenue or otherwise been harmed by any alleged violation of the Lanham Act by TTC or Trademark LLC. Consequently, plaintiffs have failed to allege any facts to support a

4

finding that LegalForce has standing to pursue the Lanham Act claim.

Accordingly, the Lanham Act claim is subject to dismissal to the extent alleged on behalf of LegalForce.

### b. Liability of Trademark Defendants

The Trademark Defendants argue that plaintiffs have failed to allege sufficient facts to support a finding that the Court has personal jurisdiction over either of them.

Where, as here, a party asserts more than one cause of action, "the court must have in personam jurisdiction over the defendant with respect to each claim." See Data Disc, Inc. v. Systems Technology Assocs., Inc., 557 F.2d 1280, 1289 n.8 (9th Cir.1977). Personal jurisdiction may be "general" or "specific." See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). A court has "general jurisdiction" over a defendant if the defendant's contacts with the forum are "substantial or continuous and systematic," i.e., if they are "of the sort that approximate physical presence." See id. (internal quotation and citation omitted). A court has "specific jurisdiction" over a defendant if "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." See id.

The plaintiff, as the party "seeking to invoke federal jurisdiction," has the burden of establishing a court's jurisdiction over each defendant. See AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 588 (9th Cir. 1996). In determining whether a plaintiff has met this burden, "uncontroverted allegations in [the] complaint must be taken as true." See id. Here, as the Trademark Defendants have not offered evidence in support of their motion, but, rather, solely challenge the allegations in the FAC, the issue presented is whether the factual allegations in the FAC, assumed true, are sufficient to establish the Court's jurisdiction over the Trademark Defendants.

In support of a finding of general jurisdiction, plaintiffs allege the following: "This

5

Court has general personal jurisdiction over Matthew Swyers and the Swyers' Entities because they have at least 1,622 customers in the State of California for trademark filing matters, which is more than in any other state." (See FAC ¶ 23.) Plaintiffs' reference to "the Swyers' Entities" is a collective reference to TTC, Trademark LLC, and Trademark PLLC. (See FAC ¶ 1.) The Trademark Defendants argue plaintiffs' collective reference to "Swyers' Entities" violates Rule 8(a), as it fails to give them notice as to which of the "Swyers Entities" has or had such customers. The Court agrees. Even assuming a defendant's having over 1600 customers in a forum could be deemed conduct that "approximate[s] physical presence," see Bancroft & Masters, 223 F.3d at 1086, a proposition for which plaintiffs cite no authority, plaintiffs' "lumping together of multiple defendants in one broad allegation fails to satisfy . . . Rule 8(a)," see Gen-Probe, Inc. v. Amoco Corp., 926 F. Supp. 948, 961 (S.D. Cal. 1996) (internal quotation and citation omitted).

With respect to specific jurisdiction, the FAC asserts two separate theories, neither of which, as discussed below, the Court finds sufficient.

First, plaintiffs allege, "the Swyers' Entities . . . have minimum contacts with the State of California" because "[t]he Swyers Entities purposefully directed their advertisements or promotions at consumers in California." (See FAC ¶ 24.) This allegation likewise is an inappropriate "lumping together of multiple defendants." See Gen-Probe, 926 F. Supp. at 961. Moreover, even if such allegation had been specific to the Trademark Defendants, the allegation would be insufficient as a matter of law to support a finding of specific jurisdiction, as "mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." See Swartz v. KPMG LLP, 476 F.3d 756, 766 (9th Cir. 2007) (finding "conclusory allegations" that defendants "'directed communications into the [forum] and otherwise conducted business therein sufficient to establish minimum contacts within the forum" were "insufficient to establish a prima facie showing of personal jurisdiction").

6

Second, plaintiffs allege, the Trademark Defendants are subject to jurisdiction in this district because each is an "alter ego" of Swyers.[2] (See FAC ¶¶ 27-28.) Although personal jurisdiction over a defendant may be premised on a showing that one defendant is the alter ego of a second defendant who is subject to jurisdiction in the forum, the plaintiff, to rely on such principle, must "make out a prima facie case that [the first defendant] is [the second defendant's] alter ego." See AT&T, 94 F.3d at 591. The Trademark Defendants argue, and the Court finds, plaintiffs have failed to make such a showing.

Under California law,[3] there are "two general requirements" for establishing liability under an alter ego theory; in that regard, the plaintiff must show: (1) "there [is] such unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist;" and, (2) "if the acts are treated as those of the corporation alone, an inequitable result will follow." See Mesler v. Bragg Mgmt. Co., 39 Cal.3d 290, 300 (1985) (internal quotation and citation omitted). Here, although the FAC includes conclusory allegations that the two requirements are met (see FAC ¶¶ 25, 27, 28), plaintiffs fail to allege any facts to support those conclusions. See Twombly, 550 U.S. at 555 (requiring more than "labels and conclusions" to survive motion to dismiss). The sole facts pleaded in the FAC that address the nature of Swyers' interest, ownership and/or control of the Trademark Defendants are that Swyers is "the owner" of said entities (see FAC ¶¶ 17), and that Swyers' name was listed on trademark applications submitted by those entities to the USPTO (see FAC ¶¶ 27-28); such facts are insufficient as a matter of law to support a finding of alter ego. See Katzir's Floor & Home Design, Inc. v. M–MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004) (holding "mere fact of sole ownership and

---

[2] No party has challenged plaintiffs' allegation that Swyers is subject to personal jurisdiction.

[3] State law governs a district court's determination as to whether, for purposes of the Lanham Act, an individual and a corporation are alter egos. See U-Haul Int'l, Inc. v. Jartran, Inc., 793 F.2d 1034, 1043 (9th Cir. 1986).

7

control does not eviscerate the separate corporate identity that is the foundation of corporate law"; observing, "[e]ven if the sole shareholder is entitled to all of the corporation's profits, and dominated and controlled the corporation, that fact is insufficient by itself to make the shareholder personally liable").

Accordingly, the Lanham Act claim is subject to dismissal to the extent it is alleged against the Trademark Defendants.

### c. Liability of Swyers

Plaintiffs allege that Swyers is liable for any Lanham Act violation by TTC or Trademark LLC, on the basis that TTC and Trademark LCC are "alter egos" of Swyers. (See FAC ¶¶ 18, 19.) The TTC Defendants argue that the FAC lacks sufficient facts to support a finding that either such entity is an alter ego of Swyers.

As discussed above, plaintiffs have failed to allege sufficient facts to support a finding that Trademark LLC, one of the Trademark Defendants, is an alter ego of Swyers. Additionally, plaintiffs fail to allege sufficient facts to support a finding that TTC is an alter ego of Swyers, as the sole facts alleged in support of such assertion are that Swyers is the "owner" of TTC (see FAC ¶ 17) and that he "prepar[es] and fil[es]" trademark applications "through TTC" (see FAC ¶ 9). See Katzir's Floor & Home Design, 394 F.3d at 1149.

Accordingly, the Lanham Act claim is subject to dismissal to the extent it is alleged against Swyers.

### d. Challenged Statements/Acts

The Court next considers whether, as to each challenged statement and act on which the Lanham Act claim is based, plaintiffs have sufficiently alleged a claim.[4]

---

[4]In the Second Claim for Relief, wherein plaintiffs set forth the basis for their Lanham Act claim, plaintiffs do not identify each statement and act they are challenging; rather, plaintiffs "incorporate by reference" all allegations made earlier in the FAC. (See FAC ¶ 83.) In their respective motions, the TTC Defendants and the Trademark Defendants identify the statements and acts on which they believe plaintiffs are basing the Second Claim for Relief, and plaintiffs, in their respective oppositions, do not dispute defendants' interpretation.

8

**(1) "#1 in Trademark Registrations"**

Plaintiffs allege the following statement, contained in "[a]d copy," is "misleading": "#1 in Trademark Registrations." (See FAC ¶ 32.a.) According to plaintiffs, neither TTC nor Trademark LLC has "the largest trademark prosecution practice." (See id.)

The TTC Defendants and the Trademark Defendants argue that plaintiffs, to the extent their claim is based on such statement, have failed to comply with Rule 9(b). In response, plaintiffs contend Rule 9(b) does not apply. Where a claim "sound[s] in fraud," however, even where fraud is not a "necessary element" of the subject cause of action, the plaintiff must comply with Rule 9(b). See Kearns v. Ford Motor Co., 567 F.3d 1120, 1125 (9th Cir. 2009). Here, plaintiffs allege that TTC and Trademark LLC's "false and misleading promotional statements deceive consumers into purchasing inferior services." (See FAC ¶ 69; see also FAC ¶ 6 (alleging TTC and Trademark Defendants' "advertisements deceive consumers"); FAC ¶ 37 (alleging "consumers are deceived" by TTC and Trademark LLC's "advertising").)[5] Given such allegations, plaintiffs' false advertising claims are subject to Rule 9(b). See Kearns, 567 F.3d at 1125; see also, e.g., Mahfood v. QVC, Inc., 2007 WL 9363986, at *3-4 (C.D. Cal. February 7, 2007) (finding allegation that defendant engaged in "deceptive advertisements" by "making, in one form or another, certain misleading and/or deceptive representations regarding [its products]" was "certainly grounded in fraud").

Plaintiffs do not contend they have complied with Rule 9(b), and they plainly have not, as plaintiffs fail to identify who made the challenged statement, fail to identify the nature of the "ad copy" in which the statement is assertedly found, and fail to state when such advertisement was broadcast or otherwise made available to the public. See Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (holding "[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct

---

[5]In addition, although pleaded in support of the Third Claim for Relief, plaintiffs expressly characterize TTC and Trademark LLC's "false and misleading statements" as "fraudulent." (See FAC ¶¶ 101.e-f.)

9

charged").

The TTC Defendants and the Trademark Defendants further argue that the challenged statement is non-actionable puffery. "[P]uffery in advertisements" constitutes "either vague or highly subjective" assertions, for example, an advertisement that "states in general terms that one product is superior." See Cook, Perkiss & Liehe, Inc. Northern California Collection Service Inc., 911 F.2d 242, 246 (9th Cir. 1990). Here, the statement "#1 in Trademark Registrations," at least in the absence of a further showing by plaintiffs with respect to the context in which the statement was made, is a "general assertion[ ] of superiority" that lacks "the kind of detailed or specific factual assertions that are necessary to state a false advertising cause of action." See id.; see also In re Century 21 - Re/Max Real Estate Advertising Claims Litig., 882 F. Supp. 915, 922-23 (C.D. Cal. 1994) (finding statement that defendant was "1 Real Estate Company In the USA In 1992 ● Most Transactions" not actionable).

Accordingly, to the extent the Lanham Act claim is based on "#1 in Trademark Registrations," the claim is subject to dismissal.

### (2) "Created by Former USPTO Attorneys"

Plaintiffs allege the following statement, contained in "[a]d copy," is "false and misleading": "Created by former USPTO Attorneys." (See FAC ¶ 32.a.) According to plaintiffs, only "one former USPTO Attorney," specifically, Swyers, created TTC and Trademark LLC, and he was "excluded from practice by [the] USPTO in 2017." (See id.)

The TTC Defendants and the Trademark Defendants argue that plaintiffs have not complied with Rule 9(b). Again, plaintiffs do not argue they have so complied, but, rather, argue Rule 9(b) does not apply, which argument, the Court, for the reasons stated above, finds unpersuasive. Further, plaintiffs have not complied with Rule 9(b), as they fail to identify who made the challenged statement, fail to identify the nature of the "ad copy" in which the statement is assertedly found, and fail to state when such advertisement was broadcast or otherwise made available to the public.

Accordingly, to the extent the Lanham Act claim is based on "Created by former

10

USPTO Attorneys," the claim is subject to dismissal.

### (3) "Trusted by Over 100,000 Businesses Since 2003"

Plaintiffs allege the following statement, located on TTC's website, is "false" and "highly misleading": "Trusted by over 100,000 businesses since 2003." (See FAC ¶ 32.c.) According to plaintiffs, TTC was "formed" in 2015 and the reference to "2003" is to the year in which Trademark PLLC was "created." (See id.) In other words, plaintiffs appear to allege that the reference to "2003" would be understood by consumers to be a reference to TTC, not to Trademark PLLC.

The TTC Defendants and the Trademark Defendants argue plaintiffs have not complied with Rule 9(b). Again, plaintiffs do not argue they have so complied, but, rather, argue Rule 9(b) does not apply, which argument, the Court, for the reasons stated above, again finds unpersuasive. Further, plaintiffs have not complied with Rule 9(b), as they fail to identify where on the TTC website the statement is located, particularly whether the statement is located in a section different from or otherwise apart from any reference to Trademark PLLC having been created in 2003, and fail to allege when the statement was made.

Additionally, although, in light of plaintiffs' allegation that the statement is or was located somewhere on TTC's website, the Court reasonably can infer that plaintiffs are alleging the statement was made by TTC, plaintiffs fail to allege any facts to support a finding that Trademark LLC also made or can otherwise be held liable for the statement. To the extent plaintiffs may be basing this part of their Lanham Act claim against Trademark LLC on the theory that both Trademark LLC and TTC are "alter egos" of Swyers, plaintiffs, as discussed above, fail to allege sufficient facts to support a finding that Trademark LCC is an alter ego of Swyers. Further, to the extent the FAC can be interpreted as alleging that Trademark LCC and TTC are alter egos of each other, the FAC, as the Trademark Defendants correctly observe, fails to include any factual allegations to support such conclusion.

Accordingly, to the extent the Lanham Act claim is based on "Trusted by over

100,000 businesses since 2003," the claim is subject to dismissal.

**(4) "As Featured in Time, Yahoo! Finance, and CNNMoney.com"**

Plaintiffs allege the following statement, located on the TTC website, is "false and misleading": "As featured in Time, Yahoo! Finance, and CNNMoney.com." (See FAC ¶ 32.d.) According to plaintiffs, TTC "has never been featured on these websites." (See id.)

The TTC Defendants and the Trademark Defendants argue plaintiffs have not complied with Rule 9(b). Again, plaintiffs do not argue they have so complied, but, rather, argue Rule 9(b) does not apply, which argument, the Court, for the reasons stated above, once again finds unpersuasive. Moreover, plaintiffs have not complied with Rule 9(b), as they fail to identify where on the TTC website the statement is located, particularly whether the statement is located in a section different from or otherwise apart from any reference to previous websites operated by other entities, as well as when the statement was made. Additionally, for the reasons stated above with respect to "Trusted . . . Since 2003," plaintiffs fail to allege any facts to support a finding that Trademark LLC can be held liable for such statement.

Accordingly, to the extent the Lanham Act claim is based on "As featured in Time, Yahoo! Finance, and CNNMoney.com," the claim is subject to dismissal.

**(5) Use of Keywords**

Plaintiffs allege that TTC and Trademark LLC "are among the largest purchasers of online advertising (including Google and Bing) for trademark filing-related search terms/keywords" (see FAC ¶ 34), and that said entities "purchase[ ] advertisements whenever consumers perform online search[es] of terms related to the practice of trademark filing, including 'trademark attorney' and 'trademark lawyers'[,] with copy that misleads consumers into believing that they will be represented by attorneys or at least will provide the services by lawful means" (see FAC ¶ 35). According to plaintiffs, TTC and Trademark LLC also "make[ ] false comparisons directly by purchasing keywords that include the term 'Trademarkia,' the website through which [LegalForce RAPC]

12

perform[s] only attorney-led trademark filing services, and falsely comparing it with the unauthorized practice of law services of TTC [and Trademark LLC]." (See id.; see also FAC ¶ 32.e (alleging TTC and Trademark LLC "use[ ] advertising links that appear to be describing an attorney-led service by bidding on Google Adword keywords such as 'trademark attorney' as a bait to attract consumers to click on them, but then direct[ ] these same consumers to [their respective] trademark services provided by non-attorneys").)

The TTC Defendants and the Trademark Defendants argue plaintiffs have not complied with Rule 9(b). Again, plaintiffs do not argue they have so complied, but, rather, argue Rule 9(b) does not apply, which argument, the Court, for the reasons stated above, finds unpersuasive. Further, plaintiffs have not complied with Rule 9(b), as they fail to identify the "copy" in the "advertisements . . . that misleads consumers" (see FAC ¶ 35), fail to identify the content of any statement that "falsely compar[es]" LegalForce RAPC's services with those of TTC and/or Trademark LLC (see id.), fail to identify who published the advertisements and made the challenged statements therein, and fail to state when such acts occurred.

Further, to the extent the claim is based on a theory that consumers who, after performing an internet search using terms such as "trademark attorney, "trademark lawyers," or "Trademarkia" in an effort to locate an attorney, ended up viewing TTC's website, such a claim, to be cognizable under the Lanham Act, would require a showing that TTC's website was "likely to mislead consumers" into believing TTC was affiliated with an attorney. See TrafficSchool.com, 653 F.3d at 827-28 (holding defendant website known as "DMV.org" was designed in manner "likely to mislead consumers into thinking [defendant] was affiliated with a government agency"). Here, however, plaintiffs fail to allege sufficient facts to support a finding that such consumers would be likely to believe they were viewing a website operated by attorneys, particularly, given plaintiffs' acknowledgement that TTC's website states TTC "is not a law firm and," that "its trademark filing service is not a legal service," and that it "may not perform services

13

performed by an attorney." (See FAC ¶ 36.)

Accordingly, to the extent the Lanham Act claim is based on the use of keywords, the claim is subject to dismissal.

### (6) Design of TTC and Trademark PLLC Websites

Plaintiffs allege the "design" of TTC's website has "substantially the same logo, look, feel, and trade dress" as Trademark PLLC's website, which entity, as noted, is a law firm. (See FAC ¶ 32.f.) As a consequence, according to plaintiffs, consumers who view TTC's website are "misle[d]" into "the false impression that the two websites are run by the same or similar entities or lawyers." (See id.)

The TTC Defendants and the Trademark Defendants argue that plaintiffs fail to allege facts to support a finding that the design of TTC's website is likely to cause confusion on the part of consumers, in light of plaintiffs' acknowledgement that TTC's website states TTC "is not a law firm," that "its trademark filing service is not a legal service," and that it "may not perform services performed by an attorney." (See FAC ¶ 36.) Moreover, as the TTC Defendants and the Trademark Defendants also argue, plaintiffs have failed to comply with Rule 9(b), as plaintiffs do not describe with the requisite particularity the alleged similarities in the two websites. Lastly, as the Trademark Defendants point out, plaintiffs fail to allege any facts to support a finding that Trademark LLC can be held liable for any misleading design of TTC's website. In their opposition to the respective motions to dismiss, plaintiffs fail to address the "design" portion of their Lanham Act claim in any manner.

Accordingly, to the extent the Lanham Act claim is based on the design of TTC's website, the claim is subject to dismissal.

### e. Conclusion

The Lanham Act is subject to dismissal in its entirety.

### 2. Deprivation of Due Process

In the Fifth Claim for Relief, plaintiffs allege that the USPTO has deprived LegalForce RAPC of due process. Specifically, plaintiffs allege, the USPTO has deprived

14

LegalForce RAPC of its "right to engage in [its] chosen occupation," which is "practicing trademark law." (See FAC ¶¶ 121-122.) Plaintiffs base their claim on their allegations that the USPTO has promulgated a number of regulations, and that it has required LegalForce RAPC, but not TTC or Trademark LLC, to comply therewith.[6] In particular, plaintiffs allege, LegalForce RAPC has been subjected to "repeated and harassing acts by the USPTO including asking for 'names and home contact information for all non-practitioner legal assistants employed by LegalForce [RAPC]'" (see FAC ¶¶ 122, 123.d (quoting "letter" LegalForce RAPC received from USPTO)), and has "spent over $100,000 on external ethics counsel as well as diverted over 80 hours of internal management working time solely to preparing responses" to the USPTO's "requests" that LegalForce RAPC demonstrate its compliance with USPTO regulations, whereas the USPTO has not required either TTC or Trademark LLC to demonstrate such compliance (see FAC ¶¶ 123-124).

The USPTO argues that plaintiffs' factual allegations are insufficient to state a due process deprivation claim. As discussed below, the Court agrees.

To establish a due process deprivation claim based on the theory that the government has deprived a plaintiff of its "right to engage in the occupation of [its] choice," a plaintiff "must show, first, that [it is] unable to pursue an occupation in the [chosen field], and second, that this inability is due to actions that were clearly arbitrary and unreasonable." See Wedges/Ledges of California, Inc. v. City of Phoenix, 24 F.3d 56, 65 (9th Cir. 1994); see also Conn v. Gabbert, 526 U.S. 286, 291-92 (1999) (noting that every Supreme Court decision recognizing a "due process right to choose one's field of private employment" entailed "a complete prohibition of the right to engage in a

---

[6] Plaintiffs identify eight such regulations (see FAC ¶ 119), including regulations requiring "[a] practitioner" to "provide competent representation to a client" (see FAC ¶ 119.a), to "not represent a client if the representation involves a concurrent conflict of interest" (see FAC ¶ 119.d), and to "hold property of clients or third parties that is in a practitioner's possession in connection with a representation separate from the practitioner's own property" in an "IOLTA trust account" (see FAC ¶ 119.f).

calling").

Here, as the USPTO points out, plaintiffs fail to allege any facts to support a finding that LegalForce RAPC, as result of the asserted differential treatment, is "unable to pursue" the practice of trademark law. See Wedges/Ledges, 24 F.3d at 65. Indeed, plaintiffs allege that LegalForce RAPC, notwithstanding the USPTO's alleged insistence that it comply with USPTO regulations while not requiring TTC or Trademark LLC to do so, "has been the largest law firm filer of trademarks before the USPTO for the past five years." (See FAC ¶ 60.)

Accordingly, plaintiffs' due process deprivation claim is subject to dismissal.[7]

### 3. Equal Protection

In the Sixth Claim for Relief, plaintiffs allege that the USPTO has deprived LegalForce RAPC of equal protection of the law. According to plaintiffs, the USPTO has violated the Equal Protection Clause by applying to LegalForce RAPC, but not to TTC or Trademark LLC, "regulations governing how to practice before the USPTO with respect to filing trademarks" (see FAC ¶ 129), even though LegalForce RAPC, TTC and Trademark LLC all "provide the same types of services" (see FAC ¶ 131).

The USPTO argues that plaintiffs' factual allegations are insufficient to state a due process deprivation claim. As discussed below, the Court agrees.

To state an equal protection deprivation claim based on "selectivity in enforcement" of a government rule, the plaintiff must establish "the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary

---

[7] The USTPO alternatively argues that all claims alleged against it are barred by "res judicata," i.e., claim preclusion (see USPTO's Mot. at 5), in light of the Court's order in an earlier-filed action, specifically, LegalForce RAPC Worldwide, P.C. v. LegalZoom.com, Inc., Case No. 17-7194, denying plaintiffs' motion for leave to amend to assert against the USPTO claims that are indistinguishable in all material respects from those alleged in the FAC filed in the instant action. Given the pendency of certain claims alleged therein that have been stayed pending arbitration (see Case No. 17-7194, Doc. No. 143), however, the requisite "final judgment on the merits," see Hells Canyon Preservation Council v. U.S. Forest Service, 403 F.3d 683, 686 (9th Cir. 2005) (setting forth elements necessary to establish claim preclusion), has not been entered in said earlier-filed action.

16

classification." See Oyler v. Boles, 386 U.S. 448, 456 (1962); see also Lee v City of Los Angeles, 250 F.3d 668, 686-87 (9th Cir. 2001) (holding claim for violation of equal protection requires showing "defendants acted with intent or purpose to discriminate against the plaintiff based upon membership in a protected class"). Here, as the USPTO points out, plaintiffs fail to allege the USPTO's alleged disparate treatment of LegalForce RAPC is or was based on an unjustifiable standard, let alone that the USPTO's alleged decision not to enforce its regulations against TTC or Trademark LLC was deliberately based on such a standard.

Accordingly, plaintiffs' due process deprivation claim is subject to dismissal.

### 4. Declaratory Judgment

In the First Claim for Relief, titled "Declaratory Judgment," plaintiffs include a federal claim that an "actual controversy" exists with regard to whether the USPTO has engaged in the "disparate enforcement of USPTO regulations on the practice of law." (See FAC ¶ 81.) Plaintiffs seek a declaration to resolve such asserted controversy. As set forth above, however, plaintiffs have failed to state a claim that the USPTO has engaged in any type of actionable disparate enforcement. Moreover, where, as here, a claim for declaratory judgment "seeks a declaration of defendants' liability for . . . other causes of action, the claim is merely duplicative and [is] properly dismissed." See Swartz, 476 F.3d at 765-66.

Accordingly, to the extent alleged against the USPTO, plaintiff's claim for declaratory judgment is subject to dismissal.

## B. State Law Claims

### 1. Claims Based on False Advertising

Plaintiffs' Third Claim for Relief, titled "California Unfair Competition in Violation of Cal. Bus. & Prof. Code § 17200 et seq.," asserted against all defendants other than the USPTO, is based in part on the same conduct on which plaintiffs base their Lanham Act claim. (See FAC ¶¶ 94, 98.a, 98.b., 98.h, 99, 100, 101.e.) To the extent so based, plaintiffs' § 17200 claim is subject to dismissal for the reasons stated above with respect

to their Lanham Act claim. See Cleary v. News Corp., 30 F.3d 1255, 1262-63 (9th Cir. 1994) (holding, where Lanham Act claim properly dismissed, § 17200 claim based on same factual allegations likewise subject to dismissal).

Plaintiffs' Fourth Claim for Relief, titled "California False & Misleading Advertising; Cal. Bus. & Prof. Code § 17500 et seq.," asserted against defendants TTC, Trademark LLC, and Swyers only, is based on the same conduct on which plaintiffs base their Lanham Act claim (see FAC ¶¶ 107, 110-111), and, consequently, is subject to dismissal for the reasons stated above with respect to their Lanham Act claim. See Appliance Recycling Centers of America, Inc. v. JACO Environmental, Inc., 378 Fed. Appx. 652, 656 (9th Cir. 2010) (holding, where judgment properly granted in favor of defendant on Lanham Act false advertising claim, judgment in favor of defendant on § 17500 claim likewise proper).

**2. Claims Not Based on False Advertising**

In the First Claim for Relief, titled "Declaratory Judgment," plaintiffs include a claim asserting they are entitled to resolution of the "controversy" as to whether TTC and Trademark LLC are "engaged in the unauthorized practice of law." (See FAC ¶¶ 80, 82). In the Third Claim for Relief, plaintiffs include claims alleging defendants have violated § 17200 by "engaging in the unlawful practice of law" (see FAC ¶¶ 97, 101.a-c, 104.b) and by submitting to the USPTO "fraudulent specimens" (see FAC ¶¶ 98.c-f, 104.a).[8]

To the extent the First and Third Claims for Relief are based on such alleged conduct, the Court, given the dismissal of plaintiffs' federal claims and the early stage of the proceedings, declines to exercise supplemental jurisdiction.[9] See 28 U.S.C. § 1367(c)(3) (providing, where district court has dismissed claims over which it has

---

[8]The Court understands the word "specimen" to refer to the "mark as used on or in connection with the goods or services" that is submitted for registration to the USPTO. See 37 C.F.R. § 2.56(a).

[9]Plaintiffs allege the Court's jurisdiction over plaintiffs' state law claims is supplemental in nature. (See FAC ¶ 22.)

18

original jurisdiction, it may decline to exercise supplemental jurisdiction over remaining claims).

Accordingly, such claims, as included in the First and Third Claims for Relief, will be dismissed pursuant to § 1367(c)(3), without prejudice to refiling in state court, or, if plaintiffs elect to amend their federal claims, without prejudice to refiling in this action.

## CONCLUSION

For the reasons stated above, defendants' motions to dismiss are hereby GRANTED and the First Amended Complaint is DISMISSED in its entirety. Plaintiffs are hereby afforded leave to amend for purposes of curing the deficiencies identified above.[10] Any such Second Amended Complaint shall be filed no later than August 3, 2018, and plaintiffs may not add therein any new defendants or any new claims, without first obtaining leave of court. See Fed. R. Civ. P. 15(a)(2).

Lastly, in light of the above, the Case Management Conference is hereby CONTINUED from July 27, 2018, to October 12, 2018, at 10:30 a.m. A Joint Case Management Statement shall be filed no later than October 5, 2018.

**IT IS SO ORDERED.**

Dated: July 17, 2018

MAXINE M. CHESNEY
United States District Judge

---

[10]If plaintiffs file a Second Amended Complaint, they also may amend the portions of the First and Third Claims for Relief that have been dismissed pursuant to § 1367(c).

19