IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LEGALFORCE RAPC WORLDWIDE P.C., | Case No. 17-cv-07318-MMC |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART TTC DEFENDANTS' MOTION TO DISMISS; GRANTING TRADEMARK DEFENDANTS' MOTION TO DISMISS; AFFORDING PLAINTIFF LIMITED LEAVE TO AMEND** |
| v. | |
| MATTHEW H SWYERS, et al., | |
| Defendants. | Re: Dkt. Nos. 81, 82 |

Before the Court are two motions to dismiss plaintiff LegalForce RAPC Worldwide, P.C.'s ("RAPC") Second Amended Complaint: (1) defendants TTC Business Solutions, LLC ("TTC") and Matthew H. Swyers' ("Swyers") (collectively, "TTC Defendants") Motion to Dismiss, filed August 10, 2018; and (2) defendants The Trademark Company LLC ("Trademark LLC") and The Trademark Company PLLC's ("Trademark PLLC") (collectively, "Trademark Defendants") Motion to Dismiss, filed August 13, 2018. The motions have been fully briefed. Having read and considered the papers filed in support of and in opposition to the motions, the Court rules as follows.[1]

## BACKGROUND

In the operative complaint, the Second Amended Complaint ("SAC"), RAPC alleges it is a law firm that practices "trademark law before the United States Patent and

---

[1]By order filed September 17, 2018, the Court took the matters under submission.

Trademark Office ('USPTO')" (see SAC ¶ 2), and that it "offers trademark filing services" through the "Trademarkia.com website" (see SAC ¶ 46).

RAPC alleges that Swyers, an attorney, is the owner of TTC and Trademark LLC, each of which provides "trademark related services" (see SAC ¶¶ 3, 11, 13), and the owner of Trademark PLLC, a law firm that provides "legal services in trademark related matters" (see SAC ¶¶ 3, 10). RAPC alleges that TTC operates the website "TTC Business Solutions," on which it has made "false" statements. (See SAC ¶ 68). RAPC further alleges that the "trademark business" of TTC, Trademark LLC, and Trademark PLLC "is built upon the foundation of the unauthorized practice of law" (see SAC ¶ 7), and that all defendants "have been submitting or aiding and abetting their customers in submitting fraudulent specimens to the USPTO" (see SAC ¶ 32; see also SAC ¶ 77).[2]

Based on the above allegations, RAPC asserts in the SAC three Claims for Relief: (1) "Declaratory Judgment"; (2) "False or Misleading Advertising [under] the Lanham Act, 15 U.S.C. § 1125(a)"; and (3) "California Unfair Competition [under] Cal. Bus. & Prof. Code § 17200 et seq." The First and Second Claims are alleged against TTC only, while the Third Claim is alleged against all defendants.

## LEGAL STANDARD

Dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure "can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." See Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). Rule 8(a)(2), however, "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)(2)). Consequently, "a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations." See id. Nonetheless, "a plaintiff's obligation to provide the grounds of his

---

[2]As set forth in its order of July 17, 2018, the Court understands the word "specimen" to refer to the "mark as used on or in connection with the goods or services" that is submitted for registration to the USPTO. See 37 C.F.R. § 2.56(a).

United States District Court
Northern District of California

entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." See id. (internal quotation, citation, and alteration omitted).

In analyzing a motion to dismiss, a district court must accept as true all material allegations in the complaint, and construe them in the light most favorable to the nonmoving party. See NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). "To survive a motion to dismiss, a complaint must contain sufficient factual material, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570). "Factual allegations must be enough to raise a right to relief above the speculative level[.]" Twombly, 550 U.S. at 555. Courts "are not bound to accept as true a legal conclusion couched as a factual allegation." See Iqbal, 556 U.S. at 678 (internal quotation and citation omitted).

## DISCUSSION

In their respective motions, defendants argue that each of RAPC's claims is subject to dismissal.

**A. Federal Claim: Lanham Act**

The Lanham Act prohibits any "false or misleading description of fact, or false or misleading representation of fact, which . . . in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another's goods, services, or commercial activities." See 15 U.S.C. § 1125(a)(1).

In the Second Claim for Relief, RAPC alleges that TTC has made false statements on its website that "misrepresent the nature, characteristics, and quality of TTC'[s] services." (See SAC ¶ 70.) RAPC alleges that "as a result of TTC's false advertisements, RAPC has been injured, including[,] but not limited to, lost customers, direct diversion of sales from RAPC to TTC, decline in sales and market share, lost profits, having to pay increased advertising costs, loss of goodwill, and additional losses and damages." (See SAC ¶ 71.)

//

3

**1. Standing**

To establish standing for purposes of Article III, a plaintiff must allege at the pleading stage and thereafter prove both an "injury in fact" and a "causal connection between the injury and the conduct complained of." See Lujan v Defenders of Wildlife, 504 U.S. 555, 560 (1992) (internal quotation and citation omitted)

The TTC Defendants argue that RAPC fails to allege facts to support a finding that RAPC suffered an injury in fact caused by TTC's alleged false advertising.

"[W]hen [a] plaintiff competes directly with [a] defendant," however, "a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing," see TrafficSchool.com v. Edriver, Inc., 653 F.3d 820, 826-27 (9th Cir. 2011), and RAPC alleges it "compete[s]" with TTC to provide "small businesses" with "services that allow them to protect their marks through filings with the [USPTO]." (See SAC ¶ 5.)[3]

Accordingly, the TTC Defendants have not shown RAPC's Lanham Act claim is subject to dismissal for failure to allege standing.

**2. Proximate Cause**

The TTC Defendants further argue that RAPC fails to allege sufficient facts to support a finding that TTC's alleged false statements were a proximate cause of RAPC's asserted injuries. See Lexmark Int'l., Inc. v. Static Control Components, Inc., 572 U.S. 118, 134 n.6 (2014) (holding proximate cause is "element" of Lanham Act claim).

A "proximate cause analysis" considers "whether the harm alleged has a sufficiently close connection to the conduct the statute prohibits." See id. at 133. With respect to the Lanham Act, a plaintiff establishes proximate cause where, for example, a competitor makes "false statements about his own goods . . . and thus induc[es] customers to switch." See id. at 137; see also id. at 138 (noting "diversion of sales to a

---

[3]As set forth above and as further described below, RAPC alleges TTC has made a number of misrepresentations on its website.

direct competitor may be the paradigmatic direct injury from false advertising").  Here,

RAPC alleges it has "lost customers" to TTC (see SAC ¶ 71), which allegation is

supported by the further allegation that, from 2015, the year TTC was "[f]ormed," to 2017,

the year RAPC filed the instant action, RAPC's "market share" has "decline[d]" from

"nearly 2.4%" to "approximately 1.8%," a loss that, according to RAPC, corresponds to

"approximately 2670 trademark[ ] filings per year" (see SAC ¶¶ 11, 58).  In addition,

RAPC alleges, it has had to reduce its prices from "$499 to $199 and lower to match the

unfair competition of TTC."  (See SAC ¶ 56.)  Irrespective of any difficulty RAPC may

encounter in proving such allegations, see TrafficSchool.com, 653 F.3d at 831 (affirming

district court's denial of request for monetary award based on lost profits, where plaintiff

failed to offer "any proof of past injury or causation"), the Court finds them sufficient at the

pleading stage.

Accordingly, the TTC Defendants have not shown RAPC's Lanham Act claim is

subject to dismissal for failure to sufficiently allege proximate cause.

### 3.  Whether Specific Statements Are Actionable

As noted, RAPC bases its Lanham Act claim on several statements by TTC, none

of which, the TTC Defendants argue, is actionable.  The Court considers the challenged

statements in turn.

#### a.  "Created by USPTO Attorneys"; "Created by U.S. Patent & Trademark Office Attorneys"; "Created by former U.S. Patent & Trademark ('USPTO') Attorneys"; Created by former U.S. Patent & Trademark Attorneys"; Created by former Attorneys With the USPTO"

RAPC alleges that TTC's website includes the following statements (see SAC

¶ 68.a):  (1) "Created by USPTO Attorneys" (see SAC Exs. 1, 3, 6, 7, 8); (2) "Created by

U.S. Patent & Trademark Office Attorneys" (see SAC Exs. 2, 5, 9); (3) "Created by former

U.S. Patent & Trademark ('USPTO') Attorneys" (see SAC Ex. 6); (4) "Created by former

U.S. Patent & Trademark Attorneys" (see SAC Exs. 10, 12); and (5) "Created by former

Attorneys with the USPTO" (see SAC Ex. 13).[4]  RAPC alleges the above-quoted statements are false for the reason that TTC was not created by "more than one USPTO Attorney[ ]," but, rather, "by just one former USPTO Attorney – Swyers."  (See SAC ¶ 68.a.)  Further, RAPC alleges, the statements, to the extent they do not include the word "former," are false for the additional reason that Sywers "was excluded from practice by the USPTO in January 2017" (see SAC ¶¶ 3, 68.a) and cannot apply for reinstatement for "at least five years" (see SAC ¶ 35).

The TTC Defendants argue that the Lanham Act claim, to the extent based on the above-quoted statements, is subject to dismissal for failure to comply with Rule 9(b) of the Federal Rules of Civil Procedure.  As set forth below, the Court disagrees.

"Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." Vess v. Ciba-Geigy Corp., USA, 317 F.3d 1097, 1106 (9th Cir. 2003) (setting forth requirements for compliance with Rule 9(b)).  Here, by alleging the statements were made by TTC on its TTC Business Solutions website and appeared on that website as of the date of the filing of the SAC (see SAC ¶ 68.a.i), RAPC has sufficiently pleaded the "who," the "when," and the "where" required by Rule 9(b).  Next, RAPC has sufficiently pleaded the "what," by quoting in the SAC each challenged statement and identifying each page on which each such statement can be found, as well as attaching to the SAC a copy of each webpage on which each such statement is located.  (See SAC ¶ 68, Exs. 1-3, 5-10, 12-13.)  Lastly, RAPC has sufficiently pleaded the "how" by, as set forth above, explaining that the use of the plural "Attorneys" is false because "TTC was created by just one former USPTO Attorney – Swyers" (see SAC ¶ 68.a), and by explaining that TTC's references to Swyers as "a USPTO Attorney without the word 'former' [is] false" (see id.) because the USPTO, in January 2017, excluded him from practice for a period of at least five years (see SAC ¶¶ 3, 35).
//

_____

[4]The Court discusses these statements collectively, as do the parties.

Accordingly, to the extent RAPC's Lanham Act claim is based on "Created by USPTO Attorneys," "Created by U.S. Patent & Trademark Office Attorneys," "Created by former U.S. Patent & Trademark ('USPTO') Attorneys," "Created by former U.S. Patent & Trademark Attorneys," and "Created by former Attorneys with the USPTO," the TTC Defendants have not shown the claim is subject to dismissal.

### b. "We've Prepared and Filed Over 20,000 Office Action Responses"

RAPC alleges that TTC's website includes the following statement: "We've Prepared and Filed Over 20,000 Office Action Responses." (See SAC ¶ 68.b, Ex. 10.) RAPC alleges the above-quoted statement is false for the reason that TTC "has not prepared and filed over 20,000 Office Action responses since 2015" (see id.), the year in which TTC was formed (see SAC ¶ 11).

The TTC Defendants argue said statement is not misleading because "it may refer to TTC's successor entities, or to other lawyers." (See TTC Defs.' Mot. at 12:25-13:1.) Nothing in the SAC, however, makes reference to TTC's having any successor or predecessor in interest,[5] and the TTC Defendants have not identified any portion of TTC's website on which any successor or predecessor is mentioned. Consequently, at the pleading stage, the Court cannot find that, as a matter of law, a customer would reasonably understand "we," as used in the challenged statement, to include, even if TTC has one, a successor or predecessor in interest. Nor can the Court, at the pleading stage, find that, as a matter of law, a customer would reasonably understand "we" to include "other lawyers," namely, attorneys that TTC's customers may select through its "Network of Independent Attorneys" to help them "assembly [an] office response." (See TTC Defs.' Mot. at 13:25-27.) Indeed, the TTC webpage cited by the TTC Defendants expressly distinguishes between "we" and "your attorney" as follows: "Depending on the package you select we, or your attorney you select through our Network of Independent

---

[5]Although the SAC alleges that Swyers, prior to creating TTC in 2015, had created two other entities (see SAC ¶ 3), the SAC does not allege that TTC is the successor to either of those entities.

Attorneys (NIA) will work with you to assemble your office action response . . . ." (See id.; see also SAC Ex. 6.)

Accordingly, to the extent RAPC's Lanham Act claim is based on "We've Prepared and Filed Over 20,000 Office Action Responses," the TTC Defendants have not shown the claim is subject to dismissal.

### c. "Created by the Top Trademark Law Firm in the United States"

RAPC alleges that TTC's website includes the following statement: "Created by the Top Trademark Law Firm in the United States." (See SAC ¶ 68.c, Exs. 11, 14, 15.) RAPC alleges the above-quoted statement is false for the reason that "TTC, a limited liability company, was created in July 2015 by Swyers personally as a sole member." (See SAC ¶ 68.c.) In the alternative, RAPC alleges that if Trademark PLLC, a law firm, created TTC, TTC's reference to said firm as being a "top" firm is false because Trademark PLLC's "owner," i.e., Swyers, "was disbarred by the USPTO." (See id.)

The TTC Defendants argue the statement is nonactionable. As discussed below, the Court agrees.

First, although a statement by TTC that it was created by a law firm might support a Lanham Act claim in light of RAPC's allegation that TTC was created by an individual and not a law firm, the three webpages on which the challenged statement is found cannot reasonably be read as making such a statement. Rather, on each of the three webpages, TTC advertises for sale a specific "package." (See SAC Exs. 11, 14, 15.)[6] In so doing, TTC states that one of those packages was "created" by the unnamed "Top Trademark Firm" (see SAC Ex. 11), and that the other two packages include "software" the unnamed law firm "created" (see SAC Exs. 14,15). As RAPC does not allege that a law firm did not create the packages and/or the software sold as part of the packages, RAPC fails to allege any facts to support a finding that the statement is false.

---

[6]The "packages" are identified on TTC's website as, respectively, the "Standard Defense Package," the "Second Request for Reconsideration Refusal to Register Package," and the "Substantive Office Action Appellate Package." (See id.)

Second, to the extent the claim challenges TTC's use of "top" to describe the unnamed law firm, such challenge is unavailing, as the reference constitutes nonactionable puffery.  See Cook, Perkiss & Liehe, Inc. Northern California Collection Service Inc., 911 F.2d 242, 246 (9th Cir. 1990) (holding "puffery in advertisements" is nonactionable under Lanham Act; describing puffery as "either vague or highly subjective" assertions, for example, an advertisement that "states in general terms that one product is superior").

Accordingly, to the extent RAPC's Lanham Act claim is based on "Created by the Top Trademark Law Firm in the United States," the claim is subject to dismissal.

### d.  "Trusted by over 100,000 Businesses Since 2003"

RAPC alleges that TTC's website includes the following statement:  "Trusted by over 100,000 businesses since 2003."  (See SAC ¶ 68.d, Ex. 18.)  RAPC alleges such statement is false for the reason that "since 2015," the year in which TTC was formed, it has not had "over 100,000 customers."  (See SAC ¶ 68.d.)

As with their argument pertaining to "We've Prepared and Filed Over 20,000 Office Action Responses," the TTC Defendants contend "Trusted by over 100,000 businesses since 2003" is not misleading because it would be understood as a reference to TTC's "predecessor."  (See TTC Defs.' Mot. at 14:10-12.)  For the reasons stated above with respect to "We've Prepared and Filed Over 20,000 Office Action Responses," however, the Court cannot find at the pleading stage that, as a matter of law, a customer would reasonably understand "we," as used in the challenged statement, to refer to TTC's predecessor, if it has one.

Accordingly, to the extent RAPC's Lanham Act claim is based on "Trusted by over 100,000 businesses since 2003," the TTC Defendants have not shown the claim is subject to dismissal.

### e.  "As Featured In"

RAPC alleges that TTC's website, "between at least October 2017 and May 2018," had a webpage that contained the phrase "As featured in," under which were displayed

9

"rotating banners showing logos" of a number of businesses, specifically, "Yahoo Finance, CNNMoney.com, CNBC, Compare LegalForms, Bank of America Small Business Community, Time, NBCNews.com, the Wall Street Journal, and INC500." (See SAC ¶ 68.e.i.)[7] RAPC alleges the statement is false "because upon information and belief, TTC has never been featured on these websites." (See SAC ¶ 68.e.)

The TTC Defendants argue RAPC's allegation that the statement is false upon "information and belief" is insufficient. The Court agrees. In particular, under Rule 9(b), an allegation based upon "information and belief" must be "accompanied by a statement of the facts upon which the belief is founded," see Wool v. Tandem Computers Inc., 818 F.2d 1433, 1439 (9th Cir. 1987), and no such statement of facts is included in the SAC.

Accordingly, to the extent RAPC's Lanham Act claim is based on "As featured in," the claim is subject to dismissal.

**B. State Law Claims**[8]

**1. Section 17200**

In the Third Claim for Relief, RAPC, as noted, alleges that all defendants have violated § 17200.

//

//

---

[7]According to RAPC. said webpage displayed, at any given time, three of those logos. (See SAC Ex. 20 first page (screen shot of webpage displaying logos of NBCNews.com, the Wall Street Journal, and INC500); SAC Ex. 20 second page (screen shot of webpage displaying logos of CNBC, Compare LegalForms, and Bank of America Small Business Community).)

[8]As the Court has not dismissed the entirety of RAPC's federal claim, the Court finds it appropriate to exercise supplemental jurisdiction over the state law claims. The Court notes, however, that RAPC's alternative allegations in support of diversity jurisdiction (see SAC ¶¶ 15-16) are insufficient for three reasons: (1) RAPC fails to allege the state in which it is "incorporated," see 28 U.S.C. § 1332(c)(1); (2) RAPC fails to allege Sywers' "state citizenship," see Kanter v. Warner-Lambert Co., 265 F.3d 853, 857-58 (9th Cir. 2001); and (3) RAPC fails to allege the identity of the member or members of Trademark PLLC, and the citizenship of each such member, see Johnson v. Columbia Properties Anchorage, LP, 437 F. 3d 894, 899 (9th Cir. 2006) (holding LLC is "citizen of every state in which its owners/members are citizens").

### a. Liability of TTC

RAPC alleges TTC has violated § 17200 by submitting to the USPTO "fraudulent specimens" (see SAC ¶¶ 77.a-b), and by engaging in the "unauthorized practice of law" (see SAC ¶¶ 7, 77.a-b; see also SAC ¶ 75).

### 1. Submission of Fraudulent Specimens

The TTC Defendants contend RAPC lacks standing to assert against TTC a § 17200 claim based on the alleged submission of fraudulent specimens, and, in addition, argue that such claim is not pleaded with the specificity required by Rule 9(b). As discussed below, the Court agrees.

First, to establish standing at the pleading stage for purposes of Article III, a plaintiff must, as noted above, allege an "injury in fact" and a "causal connection between the injury and the conduct complained of." See Lujan, 504 U.S. at 555 (internal quotation and citation omitted). Additionally, to establish standing under § 17200, a plaintiff must allege it has "lost money or property as a result of the [alleged] unfair competition," see Law Offices of Mathew Higbee v. Expungement Assistance Services ("Higbee"), 214 Cal. App. 4th 544, 547 (2013), for example, "losses in revenue and asset value" or being "required to pay increased advertising costs," see id. at 564. Here, although RAPC alleges it has lost customers and has been required to lower its prices (see SAC ¶ 56), as well as its having lost "asset value" in the form of decreased market share (see SAC ¶ 58), RAPC fails to allege any facts to support a finding that such asserted losses occurred as a result of TTC's submission of fraudulent specimens to the USPTO.

Second, as RAPC acknowledges in the SAC (see SAC ¶ 32 and n.3), "[f]raud in procuring a trademark registration occurs when an applicant knowingly makes false, material representations of fact in connection with its application with intent to deceive the USPTO." See Nationstar Mortgage LLC v. Ahmad, 112 U.S.P.Q. 2d 1361, 1366 (T.T.A.B. 2014); see also id. at 1363 (considering whether applicant submitted "fabricated specimen . . . thereby knowingly [making] false statements as to the use of his mark"). Consequently, a § 17200 claim based on the submission of "fraudulent specimens" is

subject to Rule 9(b), and RAPC has not complied with Rule 9(b), as the SAC includes no facts setting forth the "what, when, where, and how" of the alleged fraudulent submissions by TTC.  See Vess, 317 F.3d at 1106 (holding "when averments of fraud are made," claim is subject to Rule 9(b).)

Accordingly, to the extent RAPC's § 17200 claim is based on TTC's submission of fraudulent specimens to the USPTO, the claim is subject to dismissal.

### 2. Unauthorized Practice of Law

The TTC Defendants argue that, for a number of reasons, RAPC's claim that TTC has engaged in the unauthorized practice of law is subject to dismissal.  As set forth below, with the exception of the scope of relief to which RAPC may be entitled, the Court disagrees.

At the outset, the TTC Defendants argue RAPC lacks standing to assert such claim.  Where a law firm asserts against a non-lawyer competitor a § 17200 claim based on the alleged unauthorized practice of law, the plaintiff has standing if it "suffered losses in revenue and asset value and was required to pay increased advertising costs specifically because of the [alleged unauthorized practice of law]."  See Higbee, 214 Cal. App. 4th at 564.  Here, contrary to the TTC Defendants' argument, RAPC has alleged such losses (see SAC ¶¶ 56-59), as well as facts to support a finding that such losses were the result of the alleged unauthorized practice of law (see SAC ¶¶ 56, 57, 60).

Next, contrary to the TTC Defendants' argument, a § 17200 claim can be based on the alleged unauthorized practice of law and can be based on harm to RAPC rather than to the market in which RAPC and TTC compete.  See Higbee, 214 Cal. App. 4th at 554-55 (rejecting argument that "the alleged violation of statutes concerning the unauthorized practice of law cannot serve as a predicate for [a § 17200] action" brought by an attorney, albeit acknowledging "the purpose of the proscriptions against the unlicensed practice of law" is "to protect the public from representation by persons unqualified to practice law" and "not to protect lawyers from competition").

Third, contrary to the TTC Defendants' argument, Rule 9(b) does not apply to

RAPC's claim of unauthorized practice of law, as RAPC, in alleging said claim, does not "specifically alleg[e] fraud" or "facts that necessarily constitute fraud." See Vess, 317 F.3d at 1105 (setting forth circumstances under which claim is subject to Rule 9(b).) Although, as the TTC Defendants observe, RAPC does allege that TTC has made "false and misleading promotional statements [that] deceive consumers into purchasing inferior services" (see SAC ¶ 53), the allegedly false and misleading statements do not pertain to the practice of law (see SAC ¶ 68). RAPC does not allege, for example, that TTC has falsely told its customers it has the ability to practice law or that it does not practice law when in fact it does.

Fourth, the TTC Defendants contend the facts alleged in the SAC are insufficient to support a finding that TTC has engaged in the unauthorized practice of law. The Court disagrees. Under California law, the practice of law "includes legal advice and counsel and the preparation of legal instruments and contracts by which legal rights are secured although such matter may or may not be depending in a court." See Baron v. City of Los Angeles, 2 Cal. 3d 535, 542 (1970) (internal alteration omitted). Here, RAPC alleges that TTC's "non-lawyer staff," when "creat[ing] and review[ing] [a] trademark application," make "legal determinations about classification" and "recommend[ ] changes to classifications and goods and services descriptions" (see SAC ¶ 26), and that they "prepare pre-filing searches for clients on potentially conflicting marks" and "file the trademark application after reviewing that there are no conflicting marks" (see SAC ¶ 28.b-c). "In close cases, the courts have determined that the resolution of legal questions for another by advice and action is practicing law if difficult or doubtful legal questions are involved which, to safeguard the public, reasonably demand the application of a trained legal mind." Id. at 543 (internal quotation and citation omitted). In light thereof, the Court declines to find at the pleading stage that the alleged acts by TTC's non-lawyer staff do not, as a matter of law, constitute "difficult or doubtful legal issues," see id., particularly given the USPTO's stated position, as set forth on its website, regarding what actions taken in connection with the submission of a trademark

application constitute the practice of law.[9]

Fifth, the TTC Defendants have failed to show the doctrine of primary jurisdiction bars the claim, such that the USPTO should initially decide if TTC's actions constitute the practice of law. Under both federal and state law, "courts may, under appropriate circumstances, determine that the initial decisionmaking responsibility should be performed by the relevant agency rather than the courts." See Syntek Semiconductor Co. v. Microchip Technology Inc., 307 F.3d 775, 780-81 (9th Cir. 2002) (holding doctrine of primary jurisdiction may be applied where there is "need to resolve an issue" that "has been placed by Congress within the jurisdiction of an administrative body"); see also Cundiff v. GTE California Inc., 101 Cal. App. 4th 1395, 1412 (2002) (noting "specialized knowledge of the relevant agency" and need for "uniformity of application of administrative regulation"). Here, although the USPTO, as set forth above, has identified on its website conduct that, in its view, constitutes the unauthorized practice of law, the USPTO has made clear its position that "Congress has not authorized [it] to regulate entities such as TTC." (See USPTO's Mot. to Dismiss, filed June 15, 2018, at 7:24-25.) Under such circumstances, dismissal under the doctrine of primary jurisdiction is unwarranted.

//

---

[9]On a webpage titled "Warning about unauthorized practice of law," the USPTO states that "non-attorneys" cannot perform the following acts: "[c]onsulting with or giving advice to an applicant or registrant in contemplation of filing a trademark application or application-related document" or "[p]reparing or prosecuting an application." (See SAC ¶ 27.a-b (quoting USPTO webpage at https://www.uspto.gov/trademark/trademark-updates-and-announcements/warning-unauthorized-lawpractice).) On a separate webpage in which the USPTO states it "cannot give legal advice," it identifies the following acts, inter alia, that constitute "legal advice": "[c]onducting pre-filing searches for potentially conflicting trademarks," "[a]nalyzing or pre-approving documents before filing," and "[a]dvising applicants on substantive examination issues, such as the acceptability of . . . classification of goods and services." (See SAC ¶ 27.d-f) (quoting USPTO webpage at https://www.uspto.gov/learning-and-resources/support-centers/trademark-assistance-center)); see also People v. Landlords Professional Services, 215 Cal. App. 3d 1599, 1608 (1989) (holding non-lawyers' assisting clients in completing legal forms does "not amount to the practice of law as long as the service offered by [the non-lawyer] [is] merely clerical").

United States District Court
Northern District of California

1    Lastly, the TTC Defendants argue that, although RAPC alleges it is entitled to

2    restitution (see SAC, Req. for Relief, ¶ 3), RAPC has failed to allege any facts to support

3    a finding that it is entitled to restitution. "[A]n order for restitution is one compelling a

4    [§ 17200] defendant to return money obtained through an unfair business practice to

5    those persons in interest from whom the property was taken, that is, to persons who had

6    an ownership interest in the property or those claiming through that person." Korea

7    Supply Co. v. Lockheed Martin Corp., 29 Cal. 4th 1134, 1149 (2003) (internal quotation

8    and citation omitted). Here, RAPC fails to plead any facts to support a finding that TTC,

9    by reason of its having allegedly engaged in the unauthorized practice of law, obtained

10   from RAPC any property in which RAPC had an ownership interest. Consequently, to the

11   extent RAPC seeks relief under § 17200 for TTC's alleged unauthorized practice of law,

12   RAPC is limited to seeking an injunction. See ABC Int'l Traders, Inc. v. Matsushita

13   Electric Corp., 14 Cal. 4th 1247, 1268 (1997) (holding only possible remedies available to

14   plaintiff who prevails on § 17200 claim are injunctive relief and restitution).

15       In sum, to the extent RAPC's § 17200 claim is based on TTC's allegedly having

16   engaged in the unlawful practice of law, the claim is not subject to dismissal, but the sole

17   remedy that may be sought is injunctive relief.

18           **b. Liability of Swyers**

19       RAPC alleges Swyers has violated § 17200 by submitting to the USPTO

20   "fraudulent specimens" (see SAC ¶¶ 32, 77.a-b; see also SAC ¶ 74.b), and by engaging

21   in the "unauthorized practice of law" (see SAC ¶¶ 74, 77.a, 77.c).

22       To the extent the claim is based on the submission of fraudulent specimens, the

23   claim is subject to dismissal for the reasons stated above with respect to RAPC's

24   § 17200 claim against TTC. To the extent the claim is based on the unauthorized

25   practice of law, the claim is also subject to dismissal, in that RAPC's conclusory

26   allegation that Swyers engaged in such practice as an "accomplice to" and by "aid[ing]

27   and abett[ing]" TTC (see SAC ¶ 30; see also SAC 44.b), is not supported by any factual

28   allegations. See Twombly, 550 U.S. at 555 (requiring more than "labels and conclusions"

15

to survive motion to dismiss).[10]

Accordingly, to the extent RAPC's § 17200 claim is alleged against Swyers, the claim is subject to dismissal.

### c. Liability of Trademark Defendants

RAPC alleges the Trademark Defendants have violated § 17200 by submitting to the USPTO "fraudulent specimens" (see SAC ¶¶ 32, 77.a-b; see also SAC ¶ 76.a), and by engaging in the "unauthorized practice of law" (see SAC ¶¶ 7, 77.a-b; see also SAC ¶ 76.b).

The Trademark Defendants argue RAPC has failed to allege sufficient facts to support a finding that personal jurisdiction over either of them exists in the Northern District of California.

In that regard, RAPC alleges that the Court has "specific personal jurisdiction over [the Trademark Defendants] because they have minimum contacts with California." (See SAC ¶ 20). The alleged "minimum contacts" consist of Trademark PLLC's having "numerous California customers in trademark filing matters" (see SAC ¶ 21), Trademark LLC's having "hundreds of California customers in trademark filing matters" (see SAC ¶ 22), and both Trademark PLLC and Trademark LLC's having "directed their advertisements and promotions at consumers in California (see SAC ¶ 23).

A court has "specific jurisdiction" over a defendant if "(1) the defendant has performed some act or consummated some transaction within the forum or otherwise purposefully availed himself of the privileges of conducting activities in the forum, (2) the

---

[10]RAPC does allege that the USPTO filed against Swyers a complaint in which it stated he engaged in the unauthorized practice of law by, inter alia, allowing non-lawyers to sign his name on trademark applications. (See SAC ¶¶ 34, 40-43.) The SAC does not include, however, any facts to support a finding that Sywers did engage in such conduct, and the USPTO's complaint was resolved without a determination on its merits. (See SAC ¶¶ 34.j-38.) Further, although RAPC alleges Swyers "fails to maintain an IOLTA account for customers of TTC" and "fails to conduct conflict checks" (see SAC ¶ 44.c), such allegations do not support a finding that Swyers engaged in the unauthorized practice of law, but only, at best, that he failed to comply with certain rules of professional conduct.

claim arises out of or results from the defendant's forum-related activities, and (3) the exercise of jurisdiction is reasonable." See Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). Here, the Trademark Defendants argue, RAPC has failed to allege any facts to support a finding that its § 17200 claim arises out of or resulted from the California-related activities identified in the SAC. The Court agrees.

First, RAPC fails to allege any facts to show that either of the Trademark Defendants submitted to the USPTO a fraudulent specimen on behalf of any California customer or in a manner that otherwise arose out of or resulted from any of their alleged California-related activities. Second, RAPC fails to allege that either of the Trademark Defendants has engaged in the unlawful practice of law in California or on behalf of any California customer. Lastly, the § 17200 claim is not based on any advertisement or promotion by either of the Trademark Defendants, let alone an advertisement or promotion directed at consumers in California. In sum, RAPC has failed to allege sufficient facts to support a finding that its § 17200 claim "arises out of or results from" the alleged "forum-related activities" of the Trademark Defendants. See id.[11]

Accordingly, to the extent RAPC's § 17200 claim is alleged against the Trademark Defendants, the claim is subject to dismissal.

**2. Declaratory Judgment**

In its First Cause of Action, which, as noted, is asserted against TTC only, RAPC alleges it is entitled to a declaration "as to whether TTC is engaged in the unauthorized

---

[11]Trademark LLC also argues it has no contacts in California, relying on a declaration from its "controlling member," who states that Trademark LLC "is only a holding company and has never assisted customers with anything, including filing trademark applications, in California or anywhere else." (See Swyers Decl. ¶ 1, 6, 10.) In response, RAPC relies on "Annual Reports" submitted by Trademark LLC to the State of North Carolina in the years 2012 through and including 2017, in which, under the heading "Description of Nature of Business," Trademark LLC listed, "Federal Copyright and Trademark Protection Services." (See SAC Ex. 22.) In light of the above finding, however, the Court need not determine whether RAPC's evidence suffices as a "prima facie showing of jurisdictional facts" as to the nature of Trademark LLC's business activities, see Data Disc, Inc. v. Systems Technology Associates, Inc., 557 F.2d 1280, 1285 (9th Cir. 1977), or whether RAPC is entitled to discovery as to that issue, see id. at 1285 n.1.

practice of law." (See SAC ¶ 65.)

By order filed July 17, 2018, the Court dismissed RAPC's claim for declaratory judgment against another defendant, as alleged in the First Amended Complaint ("FAC"), finding a claim for declaratory judgment seeking no more than a declaration of a defendant's liability for another existing cause of action is "'merely duplicative'" and, as such, "'properly dismissed.'" (See Order, filed July 17, 2018, at 17:16-19 (quoting Swartz v. KPMG LLP, 476 F.3d 756, 765-66 (9th Cir. 2007).) Here, as noted, RAPC bases its § 17200 claim on TTC's having allegedly engaged in the unauthorized practice of law. Consequently, as the First Cause of Action does no more than seek a finding that RAPC has engaged in an act that violates § 17200, it constitutes a duplicative claim. See Swartz, 476 F.3d at 765-66.

Accordingly, the First Cause of Action is subject to dismissal.

**C. Leave to Amend**

Defendants argue in their respective motions that RAPC should not be afforded further leave to amend.

Although the Court, by order filed July 17, 2018, dismissed with leave to amend the claims alleged in the FAC, none of the deficiencies identified above, with the exception of the deficiency in the First Claim for Relief, were the subject of the prior order, and it is not clear that at least some of the newly identified deficiencies could not be cured by further amendment.

Accordingly, the Court will afford RAPC leave to amend to cure the deficiencies identified herein with respect to the Second and Third Claims for Relief.

**CONCLUSION**

For the reasons stated above, the TTC Defendants' motion to dismiss is hereby GRANTED in part and DENIED in part, and the Trademark Defendants' motion to dismiss is hereby GRANTED, as follows:

1. The First Claim for Relief is hereby DISMISSED without leave to amend;

2. The Second Claim for Relief, to the extent based on "Created by the Top

United States District Court
Northern District of California

Trademark Law Firm in the United States" and "As Featured in," is hereby DISMISSED with leave to amend; in all other respects, the Second Claim for Relief is not subject to dismissal.

3. The Third Claim for Relief is hereby DISMISSED with leave to amend, with the exception of RAPC's claim for injunctive relief based on the alleged unauthorized practice of law by TTC, which claim is not subject to dismissal.

4. RAPC is hereby afforded leave to amend solely as to the Second and Third Claims for Relief and solely to cure the deficiencies in those two claims as identified above. Any Third Amended Complaint shall be filed no later than October 31, 2018. If RAPC does not file a Third Amended Complaint by the deadline set herein, the instant action will proceed on the remaining claims in the SAC.

**IT IS SO ORDERED.**

Dated: October 12, 2018

MAXINE M. CHESNEY
United States District Judge